JOHN J. AIGEN *vs.* BOSTON AND MAINE RAILROAD.

Suffolk.     March 14. — 29, 1882.     LORD, J., did not sit.     ENDICOTT &
DEVENS, JJ., absent.

An agreement between two railroad corporations, that any injury to persons or
goods shall be paid for by the corporation on whose road it may occur, and that,
when the damage cannot be traced to either of the corporations, it shall be paid
for by each in the proportion it shares in the through price of carriage, does not
make the two corporations partners; if one corporation has made a contract
for the carriage of goods over the roads of both corporations, an action for
breach of such contract cannot be maintained against the other corporation, if
the loss is not proved to have taken place while the goods were in its custody;
and the contract between the two corporations is inadmissible in evidence.

In an action against a railroad corporation for injury to goods, in which the evi-
dence was conflicting on the question of the defendant's negligence, the judge
refused to rule that certain facts, if proved, would constitute negligence, and
submitted the question of negligence to the jury.  *Held*, that the plaintiff had
no ground of exception.

TORT, with a count in contract, for injury to two horses,
which with three others were transported from Waterville,
Maine, to Boston, over the roads of the Maine Central Railroad
Company and of the defendant.   Trial in the Superior Court,
before *Allen*, J., who allowed a bill of exceptions, in substance
as follows:

The Maine Central Railroad Company took pay for the trans-
portation of the horses over the whole line, and gave the plain-
tiff a receipt and way-bill for the entire distance.

There was evidence tending to show that four of the horses,
including the two injured, were backed into the rear end of a
car at Waterville; that a joist was put across in front of them,
to which they were tied by their halters; that a stay rope,
fastened underneath their throats and to the sides of the car,
secured them from biting and kicking, and kept them in their
places; that they were placed in the car at about eleven o'clock
in the morning, and reached Portland at about seven o'clock in
the evening of the same day, and were then and there delivered
to the defendant corporation in good order, without injury, and
without any change in their halters or the stay rope; that they
were delayed at Portland by the defendant twenty-four hours,
and were not taken out of the car, nor watered or fed, until the

next morning, when they were taken to a stable; that when they were put back in the car by the defendant's servants, they were unskilfully fastened, and the stay rope was omitted, and the injuries sued for were the direct consequence of the defendant's unskilfulness and negligence. There was conflicting evidence upon the above points, and also as to the condition of the horses and their fastenings when they were set upon the track of the defendant in Portland.

Lorenzo D. Miller, a witness and watchman for the defendant, testified that at nine o'clock of the night of their arrival at Portland, and while the car containing the horses had been moved about a mile from the point of transfer between the tracks of the two corporations on to the track of the defendant, he looked into the car and found the stay rope gone, and one of the horses backed five or six feet with the halter untied; that afterwards, when they had run the car down to the freight-house, he and a policeman tied the halter; and that the horses were then somewhat scarred and bruised, and they were left in the car over night without further care.

For the purpose of showing that the defendant would be liable if the injuries resulted from the negligence of either corporation, the plaintiff offered in evidence a contract between the defendant and the Maine Central Railroad Company, the eighth article of which was as follows: "All injuries to persons, or loss of or damage to baggage or goods and property embraced in the joint business, shall be paid for by the party on whose road it may occur; and when the loss or damage cannot be traced to either of the parties hereto, then it shall be paid for by each, in the proportion it shares in the through price of carriage." He then asked the judge to rule that the defendant would be liable if the horses were injured by the want of care of either of the two corporations, or upon either of their roads; but the judge declined so to rule, and excluded the evidence.

The plaintiff also asked the judge to instruct the jury as follows: "1. If the jury are satisfied that the horses were injured at the time the car was set off on the transfer track of the defendant, and delivered to it, and by the defendant unloaded, and the horses temporarily stabled, and then reshipped in such damaged condition without notification to the consignor thereof,

such would constitute negligence on the part of the defendant; and if it contributed to or aggravated the injuries, the defendant would be liable therefor. 2. If the jury are satisfied that the horses arrived in Portland, whether in a damaged or uninjured condition, and were allowed by the defendant to remain over night without care, feeding or unloading, this would constitute negligence on the part of defendant." The judge declined to give the instructions requested; ruled that whether such acts constituted negligence was for the jury; and submitted the question of negligence to them.

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*C. Abbott,* for the plaintiff.

*S. Lincoln,* for the defendant.

C. ALLEN, J.   1. The first ground of exception is to the exclusion of the contract between the defendant and the Maine Central Railroad Company, and the refusal of the presiding judge to rule that the defendant would be liable if the horses were injured by the want of care of either of the two corporations, or upon either of their roads.

Whether the contract was introduced in evidence or not, the defendant corporation would be liable for any loss or injury occurring through its own negligence. The English doctrine, that, where there is one contract for carriage over several connecting roads, the first carrier is exclusively liable for losses over the whole route, has never prevailed here; and the doctrine here is well established, that each carrier is responsible for the results of its own negligence, even although the first carrier may also by express contract have assumed a responsibility for losses occurring on the lines of succeeding carriers. *Judson* v. *Western Railroad,* 4 Allen, 520, 522, 523. Even if, under the terms of the way-bill given in the present case, the Maine Central Railroad Company assumed a responsibility for the safe carriage of the horses to Boston, the defendant would nevertheless be also responsible to the plaintiff, if any injury occurred through its negligence after the horses came to its possession. The verdict, therefore, must be deemed to establish conclusively that there was no negligence on the part of the defendant. The plaintiff, however, contends that, under the contract with the Maine

Central Railroad Company, the defendant assumed a liability to him beyond what the law would otherwise impose upon it; and the eighth article of the contract is specially relied on. But this contract creates no partnership between the two corporations. *Burroughs* v. *Norwich & Worcester Railroad*, 100 Mass. 26. *Washburn & Moen Manuf. Co.* v. *Providence & Worcester Railroad*, 113 Mass. 490, 493, 494. The defendant is not responsible as a partner, therefore, on the special contract of the Maine Central Railroad Company with the plaintiff. It was not the intention of article eight to give any new rights or remedies to third parties, but to furnish a rule for settling the rights of the parties to the contract as between themselves. If, for instance, the Maine Central Railroad Company, by virtue of a contract entered into by it for safe carriage of horses or other property over the whole route, and for their safe delivery in Boston, should be held responsible to the shipper for a loss occurring on the defendant's line, or a loss which could not be traced, this article would probably furnish the rule for adjusting the ultimate responsibility as between the two railroad companies. But whatever meaning the second clause of this article may have, as between the parties to the contract, the plaintiff is not a party to it, and gets no additional rights under it as against this defendant. There is no privity of contract between him and the defendant, and even if it could be seen that the provision was designed for the benefit of persons situated like the plaintiff, this would not enable the plaintiff to maintain his action. *Exchange Bank* v. *Rice*, 107 Mass. 37, 41. In whatever way the contract is looked at, the defendant thereby assumed no duty or obligation to the plaintiff which can be enforced by an action at law.

2. The second and third exceptions rest on the ground that certain particular acts of the defendant, if proved, in and of themselves constitute negligence which would render the defendant liable. Where the burden rests upon the plaintiff to prove due care on his own part, it has been held, as matter of law, in several cases, that upon undisputed facts he has failed to sustain this burden. Ordinarily, however, what constitutes a want of due care is a question for the jury. Especially is this so when a defendant's negligence is to be proved, and the facts are in

dispute.   In such cases, as a rule, the court should not select certain facts, however significant, and instruct the jury that these, if proved, constitute negligence; but should leave the question to the jury upon all the evidence, relying upon their giving the proper weight and significance to the particular facts.   *Williams* v. *Grealy*, 112 Mass. 79.   So in the present case, the facts assumed in the requests for instructions, although significant and having a strong tendency, if proved, to show negligence, were not such as to make it the duty of the court to rule that, as matter of law, they constituted negligence.   All these facts might exist, consistently with other facts or explanations which would warrant a jury in negativing the existence of negligence.

*Exceptions overruled.*