# THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY V. MICHAEL ROACH.

1. RAILROAD COMPANY; *Carrier over Connecting Lines.* While a railroad company cannot be compelled to transport beyond its termini, it is well settled that it may lawfully contract to carry passengers and property over its own and other lines to a destination beyond its own route, and when such a contract is made it assumes all the obligations of a carrier over the connecting lines as well as its own.

2. ———— *Carriage on Connecting Lines; Loss; Liability.* The sale of a through ticket for a single fare by a railroad-company to a point on a connecting line, together with the checking of the baggage through to the destination, is evidence tending to show an undertaking to carry the passenger and baggage the whole distance, and which, in the absence of other conditions or limitations, and of all other circumstances, will make such carrier liable for faithful performance, and for all loss on connecting lines the same as on its own.

3. ———— *Liability of Each Carrier.* Each carrier is liable for the result of its own negligence, and although the first carrier may have assumed the responsibility for the transportation to a point beyond its own route, any of the subsequent or connecting lines to whose negligence the loss or injury can be traced, will also be liable to the owner.

4. EVIDENCE; *Community of Interest; Last Carrier, When not Liable.* The sale of a through ticket over the route formed by the connecting lines of several railroad companies, and the checking of baggage to the end of the route, without other evidence of the relations between the companies, or the basis upon which through business was done by them, fails to show such a community of interest as would make them partners *inter sese*, or as to third persons; nor will such action alone make the last carrier liable for the negligence of the contracting carrier, or of any other carrier in the combination.

## Error from Reno District Court.

ACTION brought by *Roach* against *The Railroad Company,* to recover the value of certain baggage. Trial at the September Term, 1884, and judgment for plaintiff for $227.32. The defendant company brings the case to this court. The opinion states the material facts.

*A. A. Hurd, John Reid,* and *W. C. Campbell,* for plaintiff in error; *Geo. W. McCrary,* general counsel.

*H. Whiteside,* and *R. A. Campbell,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: This action was brought by Michael Roach against the Atchison, Topeka & Santa Fé Railroad Company, to recover for baggage alleged to have been lost and injured while in transit from New York city to Hutchinson, Kansas. A verdict was given in favor of Roach for $227.32, and judgment rendered accordingly. The railroad company brings the case here, and complains of the charge of the court and of the insufficiency of the evidence. The essential facts of the case may be briefly stated: On February 28, 1881, Roach purchased eight coupon tickets for the passage of himself and family from the city of New York to Hutchinson, Kansas, over the New York, Lake Erie & Western Railroad, Grand Trunk Railway, Michigan Central Railroad, Chicago Burlington & Quincy Railroad, Hannibal & St. Joseph Railroad, and Atchison, Topeka & Santa Fé Railroad. The tickets were purchased from one Henry Opperman, who had an office in New York, and who at the same time caused several pieces of baggage to be checked through to Hutchinson, using checks on which the names of the roads mentioned were stamped. As there was more baggage than could be carried on the tickets purchased, Roach was required to and did pay $62.15 for extra baggage, and Opperman gave him duplicates of the checks, which he retained. The defendant in error and his family made the journey over the roads mentioned, and the tickets were honored and accepted for their passage, and the servants of the several companies detached the coupons or portions of the ticket that represented the passage-money over the different roads. When the passengers reached Hutchinson application was made for the baggage, and it was found that some of it had been lost, and portions of it badly injured.

The testimony tended to show that the baggage was delivered to the first carrier in good condition, but on what road or roads the loss or injury occurred, was not shown. The plaintiff below sought to recover upon two theories: one that Opperman, who sold the tickets, was the agent of the A. T. & S. F. Rld. Co., and that that company undertook to carry the passengers and baggage over the entire route, and that, being the contracting carrier, it was liable for the loss and injury regardless of where and upon what road it occurred. The other theory is, that the several roads constitute a connected and united line, and that the combination and running arrangements existing among the owners of the roads were such as amounted in effect to a partnership, and therefore the injury and loss was a common liability, and each and all of the companies are liable, no matter upon what part of the line the loss occurred. No recovery can be had upon the first theory, for the reason that the testimony wholly fails to establish that Opperman was the agent of the defendant company. Some of the witnesses for Roach spoke of Opperman as the agent of that company, while others stated that he was the agent of the New York, Lake Erie & Western Railroad Company. It was however developed upon cross-examination, that they had no knowledge of his authority or agency beyond his action in the sale of the tickets and the checking of the baggage. Opperman testified that he was the authorized agent of the New York, Lake Erie & Western Railroad Company, and sold the tickets for, and as the agent of that company, and that he did not represent and was not the agent of the defendant company. There was other testimony to the same effect, and also that when Roach purchased his tickets, the defendant company had no tickets on sale in or about the city of New York. The theory that the defendant company was the original contracting carrier finds no support in the testimony, and no liability arises against the company on that ground. Where then is the liability? It is contended by the railroad company that the New York, Lake Erie & Western Railroad Company, being the first car-

rier, is alone liable.    While a railroad company cannot be
compelled to transport to a point beyond its own
line, it is well settled that it may lawfully con-
tract to carry persons and property over its own
and other lines to a destination beyond its own route; and
when such a contract is made, it assumes all the obligations of
a carrier over the connecting lines as well as its own.    In such
cases the connecting carriers engaged in completing the car-
riage are deemed to be agents of the first carrier, for whose
negligence and default the contracting carrier becomes liable.
(*Berg v. A. T. & S. F. Rld. Co.*, 30 Kas. 561; Lawson's Con-
tracts of Carriers, § 235; Hutchinson on Carriers, § 145;
Thompson's Carriers of Passengers, p. 431; 2 Rorer on Rail-
roads, p. 1234.)    Of course a railroad company or other com-
mon carrier may limit its liability to the loss or injury occurring
on its own line, and the understanding or contract between the
parties is to be determined from the facts of each case.    Some
of the courts have held that the mere acceptance of the prop-
erty marked for transportation to a place beyond the terminus
of the road of the accepting carrier, amounts to an undertak-
ing to carry to the ultimate destination, wherever that may be;
and in the absence of any conditions or limitations to the
contrary, will make it liable for a loss occurring upon the con-
necting lines as well as its own; while others hold that in
such a case the carrier is only bound to safely carry to the end
of its own route, and there to deliver to the connecting carrier
for the completion of the carriage.    (Lawson's Contracts of
Carriers, §§ 238, 239, 240.)    But where a railroad company
sells a through ticket for a single fare over its own and other
roads, and checks the baggage of the passenger over the en-
tire route, more is implied, it seems to us, than the mere ac-
ceptance of the property marked for a destination beyond the
terminus of its own line.    The sale of a through ticket and
the checking of the baggage for the whole distance, is some
evidence of an undertaking to carry the passenger and baggage
to the end of the journey.    The contract need not be an ex-

1. Railroad com-
pany; carrier
over connect-
ing lines.

press one, but may arise by implication and may be established by circumstances, the same as other contracts. In Wisconsin a passenger purchased a through ticket from the Chicago & Milwaukee Railway Company from Milwaukee to New York city, and at the same time delivered her trunk to that company, and received therefor a through check to New York city. Upon arrival at New York the trunk was found to have been opened and some of the articles taken therefrom. The supreme court, in ruling upon the effect of the railway company issuing the through ticket and check, stated that—

"The ticket and check given by the Chicago & Milwaukee Railway Company implied a special undertaking by that company to safely transport and carry, or cause to be safely transported and carried, the plaintiff and her baggage over the roads mentioned in the complaint, from Milwaukee to the city of New York. This we think must in legal contemplation be the nature and extent of the contract entered into and assumed by that company when it sold the plaintiff the through ticket and gave a through check for the trunk, and received the fare for the entire route." (*Candee v. Pennsylvania Rld. Co.*, 21 Wis. 582; *Ill. Cent. Rld. Co. v. Copeland*, 24 Ill. 332; *Carter v. Peck*, 4 Sneed [Tenn.], 203; *Railroad v. Weaver*, 9 Lea, 38; *B. & O. Rld. Co. v. Campbell*, 36 Ohio St. 647; same case, 3 Am. & Eng. Rld. Cases, 246; 2 Rorer on Railroads, p. 1001.)

From the authorities, we conclude that the sale of a through ticket for a single fare by a railroad company to a point on a connecting line, together with the checking of the baggage through to the destination, is evidence tending to show an undertaking to carry the passenger and baggage the whole distance, and which in the absence of other conditions or limitations and of all other circumstances, will make such carrier liable for faithful performance, and for all loss on connecting lines, the same as on its own. The liability of the first carrier does not necessarily relieve the defendant company from responsibility. Each carrier is liable for the result of its own negligence, and although the first carrier may have assumed the responsibility for the transportation to a point be-

2. Carriage on connecting lines; loss; liability.

3. Liability of each carrier.

yond its own route, any of the subsequent or connecting carriers to whose default it can be traced will be liable to the owner for the loss of his baggage. (Hutchinson on Carriers, § 715; *Aigen v. Boston & Maine Rld. Co.*, 132 Mass. 423; *Railroad v. Weaver*, 9 Lea, 39.)

The defendant company cannot, however, be held liable upon that ground, because there is no evidence that the baggage was injured or lost while in the custody of that company, nor was it in fact shown upon what part of the route the injury or loss occurred.

The other theory upon which a recovery is sought is, that the several connecting lines over which the baggage was to be carried should be treated as a continuous and united line, and that the arrangements made by the several lines for through traffic was such as to constitute them a partnership. There is a singular lack of testimony in the case, not only respecting the terms of the contract with the passenger, but also in regard to the relations existing among the several carriers. Not a word of testimony was introduced as to the running arrangements between the companies, nor the basis upon which through business was done. The practice or custom of the companies in the past was not shown, neither was there any proof that they had ever coöperated, or had done any through business beyond the transaction in question. It was not even shown what the form of the tickets was, nor what were the stipulations, if any, printed on them. There was in fact no evidence upon which to predicate a theory of partnership, or that each of the companies was the agent of all the others, except the single transaction of selling the tickets and checking the baggage. It is doubtless true that arrangements are frequently made among railroad companies whose lines connect, for through traffic, which constitute them partners. Such an arrangement is greatly to the advantage of the companies; the convenience which it affords the public invites business, and swells the traffic of the companies engaged in the joint enterprise. These arrangements among associated lines render it

difficult for the passenger or shipper, in case of loss or injury of his property, to ascertain where the loss occurred; but no such difficulty lies in the way of the railroad companies; they have the facilities and can easily trace the property to the company which caused the injury or loss. In interpreting the agreements and conduct of associated lines engaged in a through traffic, public policy and the inconvenience mentioned should be considered, and they should be fairly and liberally interpreted towards the patrons of the lines, holding the companies, where it is admissible under the rules of law, to a common liability as partners. But such arrangements for through traffic cannot be held to be a partnership, unless there is a community of interest among the companies, and under which each shares the profits and losses of the enterprise. The mere sale of a through coupon ticket over the connecting lines of several companies, and the checking of the baggage to the end of the route, does not show such a community of interest as would make them partners *inter sese*, or as to third persons. This question has been directly adjudged. A through ticket was purchased for passage from New York to Washington over three lines of railroad which constituted a through line for the transportation of passengers and freight, and the passenger purchasing the ticket received a through check for her baggage. It appeared that the fare received for through tickets was accounted for by the company selling the tickets to the other lines according to certain established rates, but there was no division of losses; and it was held in an action against the last carrier, to recover for lost baggage, that the first carrier was liable for losses occurring on its own line, as well as any other connecting line throughout the whole distance, but that the arrangement of the three companies for the sale of through tickets and the issuance of through checks, while it resembled a partnership, did not constitute one, nor make any of the connecting carriers liable for a loss not occurring on its own line. (*Croft v. B. & O. Rld. Co.*, 1 McArthur, 492.)

4. Evidence; community of interest; last carrier, when not liable.

In *Hartan v. Eastern Railroad Co.*, 114 Mass. 44, it was ruled that arrangements between connecting roads forming a continuous line for the sale of through coupon tickets, which enabled passengers to pass over all the roads without change of cars, did not imply joint interest or joint liability. In another case, where several carriers whose lines connected made an agreement among themselves to appoint a common agent at each end of a continuous line to sell through tickets and receive fare, it was held that this arrangement did not constitute them partners as to passengers who purchased through tickets, so as to render each of the companies liable for losses occurring on any portion of the line. (*Ellsworth v. Tartt*, 26 Ala. 733.) A somewhat similar case was decided in New York. There a passenger purchased a through ticket from New York to Montreal over several connecting lines of railroad, owned by several companies. The ticket was a strip of paper divided into coupons, whereof one was to be detached and surrendered to the conductor of each line on the route. The passenger, instead of giving his valise into the charge of the agent of the company and receiving a check therefor, kept it in his own charge to the terminus of the line of the first carrier, where he delivered it to the agent of the connecting line, who checked it through to another point on the road. It appeared that an arrangement had been entered into between the various lines from New York to Montreal to connect regularly. Tickets were sold in New York for the entire route or intermediate places, under the direction of a general agent, who was paid by the several companies. The rate of fare was different on the different roads, and each company received its own proportion of the whole fare or passage-money at the close or at the beginning of every month, according to the established rates of fare. It was held that there was nothing in an arrangement like this to constitute the different companies partners for the transportation of passengers or baggage, so as to make one of them liable in common with the others for the loss of the valise. It was decided that

"the arrangement may be beneficial to them as well as to the public, inasmuch as by facilitating travel, it may tend to increase it, but that would not create that joint interest, that community in profit and loss, which is essential to the existence of a partnership." (*Straiton v. New York & New Haven Rld. Co.*, 2 E. D. Smith, 184; *Hot Springs Rld. Co. v. Tripple & Co.*, 42 Ark. 465; same case, 18 Am. & Eng. Rld. Cas. 562; *Aigen v. Boston & Maine Rld. Co.*, 132 Mass. 423; same case, 6 Am. & Eng. Rld. Cas. 426; *Darling v. Boston & Worcester Rld. Co.*, 11 Allen, 295; *Kessler v. Railroad Co.*, 61 N. Y. 538; *Irwin v. Rld. Co.*, 92 Ill. 103; *Insurance Co. v. Rld. Co.*, 104 U. S. 146; same case, 3 Am. & Eng. Rld. Cas. 260.)

Among the cases relied on by the defendant in error is *Hart v. Rld. Co.*, 4 Selden, 37. In that case the defendant, which was one of three railroad companies owning distinct portions of a continuous road, was held liable for the loss of the baggage of a passenger received at one terminus to be carried over the whole road. The liability was not, however, based alone upon the selling of the ticket and the checking of the baggage. In addition to through tickets, it appeared that under the agreement made each of the railroad companies ran its cars over the whole route, and employed the same agents to sell passage-tickets. Besides these facts, it appeared that the lost baggage had been placed directly in charge of the servants of the defendant company, and that its loss was due in part to the negligence of that company.

*Texas & Pacific Rld. Co. v. Fort*, a decision by the commission of appeals of the state of Texas, reported in 9 Am. & Eng. Rld. Cases, 392, is also relied on. There it is held that the delivery of through checks upon which were stamped letters indicating the different railways over which the baggage would go, constituted a contract under which the several companies were liable, regardless of the line upon which the loss occurred—a proposition to which we cannot accede. The decision in this case is based upon the ruling in *Hart v. Rail-*

*road Co.*, supra, which as we have seen, was determined upon other considerations. The same may also be said respecting *Texas & Pacific Railway Co. v. Ferguson,* another decision of the commission of appeals of Texas, 9 Am. & Eng. Rld. Cases, 395, as well as *Hart v. The Grand Era,* 1 Woods C. C. 184.

The only other case relied on is *Wolf v. Central Rld. Co.*, 68 Ga. 653. It was there held that where a passenger with a through ticket over a connecting line checked his baggage at the starting-point through to his destination, and upon arrival there found that it had been injured, he might sue the railroad company which issued the check or the one delivering the baggage in bad order. Upon the facts in that case the court determined that the company selling the tickets was to be regarded as the agent of the other companies composing the line, and intimated that where a passenger travels over a continuous line on a through ticket, and the baggage is sent on a through check, that any one of the companies may be held liable for spoliation of the baggage, irrespective of the point at which it actually occurred; and the query is also raised as to whether they are jointly liable as partners. The writer of the opinion held that by the sale of the tickets and the division of the receipts at periodical settlements, they acted as principals and not as agents, and that by such action they stood substantially in the position of partners in the through business, and were jointly and severally liable as such. The concurrence of the other justices was, however, placed upon the ground that as the last carrier, and the one which was sued, received the baggage in apparent good condition, it was presumably liable, and the chief justice stated that this was the exact point decided. It is difficult in many cases to determine whether the arrangements and agreements of connecting carriers are such as to constitute each of them principals, or to place them in the relation of partners; but neither upon reason nor authority can we hold that the sale of through tickets and the checking of baggage over the connected lines

of several companies, without other proof of their relations or the basis upon which the business was done, is sufficient to make them jointly and severally liable as partners.

The instructions of the court not being in accord with the views herein expressed, and the evidence being insufficient to support the verdict, the judgment of the district court must therefore be reversed, and the cause remanded for another trial.

All the Justices concurring.