# Simpson et ux. *v.* Southern Pennsylvania Traction Company, Appellant.

*Negligence — Street railways — Connecting lines — Continuous journey—Same car and crew — Carrier and passengers — Implied contract—Collision on second line—Liability of first company— Case for jury.*

1. In an action against a street railway company to recover for personal injuries sustained by a husband and wife while passengers on a street railway car, by reason of its collision with another car, where the defendant disclaimed liability on the ground that the accident occurred in another state on the lines of a connecting railway and that defendant's line and charter powers extended only to the state line, the case is for the jury and a verdict for the plaintiff will be sustained where it appeared that both cars were marked with the name of the city at the end of the connecting line in the other state and bore the initials of the defendant company, that the journey was made without change of conveyance or car crew, and there was nothing at the state line to indicate to the traveling public the terminus of either road.

2. When all the facts are considered, only one inference is possible, namely, that, when plaintiffs were accepted as passengers, defendant intended, and at least impliedly agreed, to carry them to their destination.

3. Under the facts of this case, an operative agreement between the two companies by which each paid its own expenses pro rata, including the wages of the crews, will not affect the rights of the plaintiffs against defendant.

4. So far as plaintiffs' rights are concerned, the employees were either the servants or agents of defendant until the contract of carriage was fulfilled, and for that purpose the tracks of the other company were, pro hac vice, those of defendant.

Argued Feb. 11, 1918.   Appeal, No. 249, Jan. T., 1917, by defendant, from judgments of C. P. Delaware Co., June T., 1916, No. 255, on verdicts for plaintiffs in case of William G. Simpson and Barbara M. Simpson, his wife, v. Southern Pennsylvania Traction Company, a corporation. Before BROWN, C. J., POTTER, STEWART, MOSCHZISKER and FRAZER, JJ. Affirmed.

Trespass for personal injuries. Before HAUSE, J., specially presiding.

The facts appear by the opinion of the Supreme Court.

Verdict for plaintiff, William G. Simpson, for $750, and for plaintiff, Barbara M. Simpson, for $3,000 and judgments thereon. Defendant appealed.

*Errors assigned,* among others, were in refusing defendant's motions for judgments n. o. v.

*John B. Hannum,* for appellant, cited: Berkebile v. Johnstown Traction Co., 255 Pa. 310.

*John J. McDevitt, Jr.,* with him *W. Roger Fronefield,* for appellees.—The evidence of the car crew, supplemented by evidence as to the appearance of defendant's name and initials upon the rolling stock by which plaintiffs were transported, was sufficient to sustain a verdict for plaintiff: Hennessey v. Baugh, 29 Pa. Superior Ct. 310; Corpies v. Sand Co., 31 Pa. Superior Ct. 107; Cook v. Conestoga Traction Co., 21 Lanc. L. R. 161; Penna. R. R. Co. v. Sellers, 127 Pa. 406; Hill v. Epley, 31 Pa. 331; Marshal v. Foltz, 221 Pa. 570.

The case was for the jury: Philadelphia & Reading Ry. Co. v. Ramsay, 89 Pa. 474; Prethrow v. W. J. & Seashore R. R. Co., 214 Pa. 112; Beamer v. P. & R. Ry.

Co., 50 Pa. Superior Ct. 211; Mullen v. Chester Traction Co., 235 Pa. 516; Moss v. Lancaster & York, Etc., Co., 218 Pa. 601.

OPINION BY MR. JUSTICE MOSCHZISKER, March 11, 1918:

In this case, William G. Simpson and Barbara M., his wife, sued to recover damages for personal injuries to the latter, alleged to be due to the negligence of the defendant company, while she was a passenger on one of its cars; verdicts were recovered and judgments entered thereon; the defendant has appealed.

A new trial was not asked of the court below; but defendant insisted there, as it does here, that judgments n. o. v. should be entered in its favor.

The defendant company operates an electric street railway, for the transportation of passengers, extending in a southerly direction from the Borough of Darby, Delaware County, through the City of Chester to the state line between Pennsylvania and Delaware; it has no corporate authority to operate in the latter state. The Wilmington & Philadelphia Traction Company operates a railway of like character from the City of Wilmington, Delaware, northward to the state line just referred to, and connects with the rails of the defendant company, making a continuous route by track and overhead wire construction. Passengers are carried in cars belonging to the defendant company, without change of conveyance, from Darby to Wilmington and return, all the while under charge of the same motorman and conductor. The fare from Darby to Wilmington, thirty cents, is collected in six installments of five cents each —four of them for transportation in Pennsylvania and two in Delaware. Nothing at the state line indicates to the traveling public the terminus of either road, or suggests a change in ownership and management; but the two corporations have an operating agreement, under which the Delaware end of the route is supplied with

electric current by the Wilmington & Philadelphia Company, while the Pennsylvania end is supplied by the defendant. The receipts and operating expenses of the continuous route are adjusted by the two companies at stated times, the fares being first turned in by the conductors to the office of the defendant and accounted for by the latter to the other company. The crews operating the cars are paid at the office of defendant, but their time is kept by and their wages drawn from the treasuries of both companies, each concern paying its pro rata share according to the number of hours the employees serve them respectively.

On September 12, 1915, the plaintiffs, desiring to reach Wilmington, boarded one of defendant's cars at Darby. As Mr. and Mrs. Simpson appeared, the conductor publicly announced that the car was bound for Chester and Wilmington; and, in addition, it carried a lettered sign indicating that Wilmington was its destination. Shortly after starting, the conductor collected from plaintiffs two five-cent fares, one for Mr. Simpson and the other for his wife; then, at regular intervals, he collected three additional fares of the same amount from each, which paid their transportation to the state line; and, upon crossing the line, another five-cent fare per passenger was taken up. While in the last mentioned fare zone, the car collided with another, coming in the opposite direction, and plaintiffs were injured. Although the accident happened on the Wilmington & Philadelphia Company's end of the line, the northbound car, like the one on which plaintiffs were riding, belonged to and was marked with the initials of the defendant company; moreover, its motorman wore a badge similarly inscribed, and testified that he considered himself an employee of defendant.

The appellant contends that, when it accepted the plaintiffs at Darby as passengers, it undertook to carry them only to the state line, because there its railway and charter power ceased. In negativing this contention (in

the separate case of the husband), the court below very properly says: "The liability of defendant to plaintiff is not to be determined by the length of its line nor the extent of its charter powers, but by ascertaining what the defendant either expressly or impliedly agreed with plaintiff to do. Plaintiff was a passenger on defendant's car. Defendant, by its conductor, invited him to board the car for passage—not to the state line, but to Wilmington. The sign on the car indicated to plaintiff, and to the public, that the car was bound for that point. Plaintiff placed himself, when he boarded the car, in the safe-keeping, as a passenger, of defendant's conductor and its motorman; he paid the cost of transportation toward his destination when and in the portions demanded, and he paid it to the defendant's conductor in performance of his part of the contract with the defendant company to carry him to his destination. From the start of the car at Darby until the collision, he knew no other party to his contract of carriage save the defendant. The contractual relation of a carrier and passenger on a street car is seldom created by express contract, but is usually implied from the attending circumstances and the acts of the parties. The purchase of a ticket or the payment of fare is not essential to the creation of such relation: Berkebile v. Johnstown Traction Co., 255 Pa. 310. Counsel frankly concedes that if plaintiff had purchased from defendant a ticket for passage from Darby to Wilmington, or if, when he boarded the car, the conductor had collected from him......the total fare, then would have arisen a contract for through carriage, and the question should be ruled adversely to his client under Prethrow v. W. J. & S. R. R. Co., 214 Pa. 112; but wherein is there any basis for a distinction merely because the defendant saw fit to collect the cost of transportation in......installments, at......different points on the route, rather than have the passenger procure a through ticket or pay his full fare when the journey began? If plaintiff had been advised, when the

state line was reached, that he was thenceforward to be carried by and under the care of the Wilmington & Philadelphia Company, and he had remained on the car and paid his fare with that knowledge, a different situation would be presented.......Had the plaintiff purchased from defendant a package of tickets, each good for a five-cent fare, for use on the route anywhere between Darby and Wilmington, the defendant's conductor would have collected each ticket separately as the car proceeded toward Wilmington; and, had the plaintiff been injured, when and as he was, the defendant's liability would be beyond question under the ruling in Mullen v. Chester Traction Co., 235 Pa. 516.  The distinction between the use of a number of five-cent coupon tickets at regular intervals in the course of the journey and the payment of a five-cent cash fare at such intervals is, in our judgment, of no importance; and, as we view the situation, this is the only point of difference between the case just referred to and the question before us.  Defendant agreed to carry plaintiff to Wilmington; [the latter] knew no other contracting party, and whether the accident happened on defendant's own line or on the line it was required to use in order to fulfill its contract with him, is immaterial."

The court below reached the right conclusion.  Nothing whatever was brought to plaintiffs' notice to suggest that defendant contemplated a change in the passengers' relationship to it, as the carrying company, at any point on the line of travel between Darby and Wilmington. When all the facts are considered, only one inference is possible, namely, that, when plaintiffs were accepted as passengers, the defendant intended, and at least impliedly agreed, to carry them to their destination; and, as well decided by the court below, the fact that the fares were collected en route, in several installments, makes no material difference.  Furthermore, under the circumstances of this case, the details of the operative agreement between the two companies cannot affect the rights

of the plaintiffs against the defendant. The former entered a car of the latter, on its line, marked and formally announced as bound for Wilmington; and this car, at that time, admittedly was manned by defendant's employees. So far as plaintiffs' rights are concerned, these employees were either the servants or agents of defendant until that company's contract of carriage was fulfilled by conveying Mr. and Mrs. Simpson safely to their point of destination, and, for that purpose, the tracks of the Wilmington & Philadelphia Company were, pro hac vice, those of the defendant: Moss v. Lancaster, etc., St. Ry. Co., 218 Pa. 601, 604.

The assignments of error are overruled, and the judgments are affirmed.