No. 33,265

THELMA CRAWFORD, a Minor, by Her Next Friend, SARA BARTELL, *Appellee,* v. THE SOUTHERN KANSAS STAGE LINES COMPANY, *Appellant.*

(66 P. 2d 601)

Opinion filed April 10, 1937.

*H. S. Roberts,* of Kansas City, *J. W. Blood, F. W. Prosser,* both of Wichita, and *J. T. Jennings,* of Kansas City, Mo., for the appellant.

*Blake A. Williamson, James K. Cubbison* and *Lee Vaughn, Jr.,* all of Kansas City, for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This was an action for damages for injuries sustained in a motor bus in which plaintiff was a passenger, on a journey between Kansas City, Mo., and Richmond, Mo.

Plaintiff recovered judgment, and defendant appeals, assigning various errors, the first of which pertains to the overruling of defendant's demurrer to plaintiff's evidence.

The principal defense to this action was that the bus on which plaintiff was a passenger was one which defendant had leased or loaned to another corporation, the Blue Motor Coach Lines, Inc., and that defendant did not operate a bus line between Kansas City and Richmond or elsewhere east of Kansas City, Mo. That contention and the evidence supporting it are involved in defendant's argument touching the propriety of the trial court's ruling on the demurrer; but we must consider plaintiff's evidence in its most favorable light, since the trial court and jury gave it full credence, and without regard to defendant's evidence to the contrary. (*Feighley v. Milling Co.,* 100 Kan. 430, 165 Pac. 276; *Rosenfeld Co. v. Gleed,* 110 Kan. 75, 81, 202 Pac. 611; *Hill v. Southern Kansas Stage Lines Co.,* 143 Kan. 44, 49, 53 P. 2d 923.)

The evidence for plaintiff tended to show that on the morning of August 21, 1935, she went to a union bus station in Kansas City and purchased a round-trip ticket to Richmond. The ticket bore the name of the "Southern Kansas Stage Lines Company." It had three coupons, one for the outward journey, one for the return journey, and one which served as the passenger's receipt. In a few minutes a porter employed in the depot told plaintiff her bus was ready. On the side of the bus appeared the words "Southern Kansas Stage Lines," and also the words "Santa Fe Trail."

At the entrance to the bus the motorman detached and retained the coupon for the outward journey and permitted plaintiff to

enter the bus, which shortly thereafter left the depot. The bus stopped at another bus station and five other passengers entered it. The bus then proceeded on its journey. While it was running at 40 or 45 miles per hour near Excelsior Springs, Mo., the left rear wheel of the bus came off, which let the bus drop a few inches. Plaintiff was thrown to the floor, her head was bumped and her body was bruised and twisted. She telephoned to friends, who came for her and took her to Richmond. During that day a lump grew' on her head; she began to have pains in her stomach, and her menstruation developed to the extent of a hemorrhage. That evening she returned to Kansas City on another bus, the motorman of which accepted the return coupon of her ticket for her passage. On reaching Kansas City, she took a cab to her home, where she was confined to her bed for about a month.

In this action which followed the jury returned a general verdict for plaintiff and answered special questions thus:

"1. Was plaintiff sold a ticket to Richmond, Mo., and return on the Southern Kansas Stage Lines on the day in question?  A.  Yes.

"2. Did the ticket seller at 13th and Main on the day in question advise plaintiff, after selling her a ticket, when her bus would leave such station for Richmond, Mo.?  A.  Yes.

"3. If you answer question 1 in the affirmative, state if said ticket was presented by plaintiff for passage to the driver of the bus upon which plaintiff rode on the day in question and was thereafter accepted as a passenger on said bus.  A.  Yes.

"4. State what bus company's name, if any, was painted on said bus upon which plaintiff rode on the day in question.  A. The Southern Kansas Stage Lines Company, a corporation.

"5. Did the company operating the bus depot at 13th and Main on the day in question sell Southern Kansas Stage Lines bus tickets?  A.  Yes.

"6. If you answer question No. 5 'Yes,' did the company operating the bus depot receive a commission from the sale of such tickets?  A.  Yes.

"7. If you answer question 5 in the affirmative, state if the defendant company received 90 percent of the proceeds of such sale of the tickets sold plaintiff.  A.  Yes.

"8. What bus company do you find was operating the bus plaintiff was riding in at the time of the accident?  A. The Southern Kansas Stage Lines Company, a corporation.

"9. What company operated the depot at 13th and Main at the time the ticket was purchased there?  A.  Union Pacific Bus Depot, and was owned by Interstate Transit Lines.

"10. Aside from the commission for selling the ticket at 13th and Main, what bus company got the rest of the price of the ticket?  A. The Southern Kansas Stage Lines Company, a corporation.

"11. What bus company was paying the wages of the driver of the bus in

question the day of the accident in question? A. The Southern Kansas Stage Lines Company, a corporation.

"12. Did the Southern Kansas Stage Lines operate farther east than Kansas City on August 21, 1935? A. Yes."

Judgment was entered on the verdict, and defendant appeals.

Counsel for defendant first contend that the evidence briefly summarized as above "can at best make out only a prima facie showing of (defendant's) ownership in operation, but fails in any way to answer or overcome the verified allegation and statements in appellant's (defendant's) answer." Plaintiff's amended petition had alleged—

"That defendant, the Santa Fe Trail Stages, Inc., is a subsidiary of the Southern Kansas Stage Lines Company, being either owned or controlled by said Southern Kansas Stage Lines Company, and said defendant companies were and are engaged in conducting said bus line and ticket station as partners."

This allegation was not an important fact in the statement of plaintiff's cause of action. Let it be granted that her evidence did not overcome the effect of defendant's verified answer, the result would merely be a failure of proof of the alleged relationship of the defendant to the "Santa Fe Trail Stages, Inc."—an inconsequential matter so far as plaintiff's cause of action was concerned. Moreover, if the point was otherwise important, its potency evaporated when defendant itself supplied the evidence touching the relationship of the companies. (*Railway Co. v. Bentley,* 78 Kan. 221, 93 Pac. 150; *Hospital Co. v. Odd Fellows,* 99 Kan. 488, 162 Pac. 302; *Shideler v. Capital Gas and Electric Co.,* 126 Kan. 33, 35, 266 Pac. 741.)

The next error urged is based on the overruling of defendant's motion for a directed verdict "interposed at the close of all the testimony."

In support of this point, defendant stresses the evidence of its witness, the motorman, who testified that he was an employee of the "Blue Motor Coach Lines" at the time of the accident; that his employer honored tickets of the defendant company; that there was no other bus service over the route between Kansas City and Richmond than that supplied by the "Blue Motor Coach Lines"; and that he did not know whether the defendant, the Southern Kansas Stage Lines Company, owned the bus he was driving on the day of the accident.

The manager of the bus depot also testified that the depot where

plaintiff purchased her ticket was owned by the Interstate Transit Company, and that the bus companies which operated in and out of that depot had an arrangement between themselves for the sale of tickets and for a division of the receipts.

The division superintendent of the Blue Motor Coach Lines testified that his company was one of a system of connecting carriers, and that the proceeds of sales of passenger tickets were divided between the depot company and the bus line which rendered the service; that the Blue Motor Coach Lines rented buses from the defendant and paid 10 cents per mile for their use.

Another witness for defendant testified thus:

"The Southern Kansas Stage Lines Company operated to Kansas City, but not east of there; that there was only one line between Kansas City and Richmond and that was the Blue Motor Coach Line; that they rented buses from Southern Kansas Stage Lines and did so in 1935; that Southern Kansas Stage Lines Company did not participate in the fares when a bus was rented, but was paid by either a mileage basis or lump sum per day, which sum was charged regardless of the number of passengers carried. That Southern Kansas Stage Lines Company was a part of the Santa Fe Trail System, but that it and the other companies comprising that system were all independent corporations. That the depot at 13th and Main in Kansas City was the Union Pacific station; that the Southern Kansas Stage Lines Company did not get any of the fare from the tickets sold to appellee, as all of the transportation was over the Blue Motor Coach."

It is on testimony of the sort just summarized that defendant contends that it was entitled to a directed verdict. That contention is altogether untenable. We scarcely pause to say that in a jury lawsuit such as this, it is for the jury to decide what credence shall be given to testimony, no matter how worthy of credence the witnesses who gave the testimony may be.

But given even unqualified credence, we do not regard defendant's evidence as seriously impairing plaintiff's prima facie case. An ordinary citizen who goes to a regular bus station to purchase a ticket to ride on a regular bus route is not subject to the rules of *caveat emptor;* she does not have to inquire whether the ticket seller has the authority to sell her a ticket; whether the porter at the depot is authorized to tell her that her bus is ready and which bus she is to take; whether the ticket inspector who reads her ticket and detaches a coupon therefrom and permits her to enter the bus has authority to do so; nor whether the bus she enters is rented to another company than the company which owned it or which sold

her her ticket; nor is she concerned with the intricate business arrangements of the various corporations with which she dealt that day to her damage and injury—the depot company that sold her the ticket, the depot porter who directed her what bus to take, the motorman who accepted her as a passenger, the defendant whose inscription was on her ticket and whose name indicating ownership was on the bus in which she rode and in which she was injured.

In *Carter & Hough v. T. J. Peck*, 36 Tenn. (4 Sneed) 203, it was held:

"Where two lines of a stage route were owned by different persons, between whom there was an arrangement that passengers at either end might purchase of their respective agents through tickets which would entitle them to transportation to the other end of the route, a passenger so purchasing through tickets, who is hindered or detained in his journey by the fault of the owners of the connecting line, may recover damages from the party of whom such tickets were purchased; and his right in this respect is in no way impaired by his previous knowledge of such distinct ownership and the arrangement between said owners." (Syl.)

In *Barkman v. Pennsylvania R. Co.*, 89 Fed. 453, it was held:

"A railroad company selling a ticket for the carriage of a passenger between two points is liable in tort for an injury resulting to such passenger through the negligence of those operating the train, though such train was owned and operated by a different company, the ticket being receivable for passage thereon through an arrangement between the two companies." (Syl.)

In *Simpson v. Southern Pa. Traction Co., Appel.*, 260 Pa. St. 526, 103 Atl. 884, the syllabus reads:

"1. In an action against a street railway company to recover for personal injuries sustained by a husband and wife while passengers on a street railway car, by reason of its collision with another car, where the defendant disclaimed liability on the ground that the accident occurred in another state on the lines of a connecting railway and that defendant's line and charter powers extended only to the state line, the case is for the jury, and a verdict for the plaintiff will be sustained where it appeared that both cars were marked with the name of the city at the end of the connecting line in the other state and bore the initials of the defendant company, that the journey was made without change of conveyance or car crew, and there was nothing at the state line to indicate to the traveling public the terminus of either road.

"2. When all the facts are considered, only one inference is possible, namely, that, when plaintiffs were accepted as passengers, defendant intended, and at least impliedly agreed, to carry them to their destination.

"3. Under the facts of this case, an operative agreement between the two companies by which each paid its own expenses pro rata, including the wages of the crews, will not affect the rights of the plaintiffs against defendant.

"4. So far as plaintiffs' rights are concerned, the employees were either the servants or agents of defendant until the contract of carriage was fulfilled, and for that purpose the tracks of the other company were, *pro hac vice,* those of defendant."

See, also, *Higgins v. Southern Kansas Stage Lines Co.,* 141 Kan. 641, 42 P. 2d 599; *Weed v. S. & S. Railroad Co.,* 19 Wend. (N. Y.) 534; *Mullen v. Chester Trac. Co.,* 235 Pa. St. 516, 84 Atl. 429, 42 L. R. A., n. s., 76; 10 C. J. 874-883; *Purple Swan Lines v. Egyptian Transp. Co.,* 256 Ill. App. 442; *Guy v. Interstate Transit, Incorporated,* 244 Ky. 479, 51 S. W. 2d 455, and case note in 32 N. C. C. A. 489-501.

One of our own early cases is cited by appellant in which it was held that one corporation is not liable for the acts or faults of another corporation merely because the first owned a controlling interest in the capital stock of the second. (*A. T. & S. F. Rld. Co. v. Davis,* 34 Kan. 209, 8 Pac. 530.) Doubtless that general rule of law is still sound (*Stone v. Cleveland, C., C. & St. L. Ry. Co.,* 202 N. Y. 352, 95 N. E. 816, 35 L. R. A., n. s., 770), but it has been qualified. (*Cities Service Co. v. Koeneke,* 137 Kan. 7, 28-29, 20 P. 2d 460.)

In another early case, *Mathews v. Railroad Co.,* 60 Kan. 11, 55 Pac. 282, cited by defendant, it was held that liability for the fault of one public carrier could not be fastened on the connecting carrier which sold the injured passenger a through ticket, but the contract printed on that ticket limited the seller's liability to injuries sustained on its own lines. Moreover, the rule of the Mathews case has been largely superseded by regulations promulgated by public authority.

Defendant's next complaint pertains to the overruling of its motion to set aside eight of the twelve special findings of the jury on the ground they were not supported by the evidence. We hold otherwise. The evidence which included the persuasive evidential circumstances sufficiently sustained the special findings, but it would serve no useful purpose to recapitulate the evidence. (*State v. Rose,* 124 Kan. 37, 38, 257 Pac. 731.)

It is also contended that the verdict was excessive. It was for $2,000. "A good round sum"; but assuming that the action itself was bona fide and that plaintiff's evidence was worthy of the credence accorded it by the trial court and jury, the judgment on that verdict is not open to an order of remittitur under the rule frequently stated and applied by this court. (*Hardwick v. Railways Co.,* 114

Kan. 843, 845, 220 Pac. 1043; *Ellis v. Kansas City Public Service Co.*, 131 Kan. 555, 292 Pac. 939; *Carter v. McNally*, 137 Kan. 313, 317, 20 P. 2d 491.)

Another point urged on our attention relates to some newly discovered evidence. Plaintiff was a single person at the time of the alleged accident on August 21, 1935. She was married before the trial, at which time she testified that she had become *enceinte*. Her child was born on June 20, 1936. It was reported by her attending physician as a full-term female child, weight 8 lbs. 12 oz.; and that plaintiff's confinement had been natural, with no complications.

Being of normal birth, it would appear that the child must have been begotten about 30 days after the alleged accident, or about September 21, 1935. The physician who attended her following her alleged injuries on August 21, testified that "he saw her nearly every day for three weeks, then nearly every other day for awhile after she was up and down. She came to his office three times, the last time being December 3, 1935." Plaintiff was not married until November 7, 1935; and if the child was not begotten until then or later, it would have been of premature birth; but the report of the child's birth and registration is to the contrary. Another circumstance testified to in support of the motion for a new trial was that diligent inquiry at the home of plaintiff in Richmond and elsewhere in Missouri failed to disclose any information concerning the birth of a child to plaintiff. But later it was discovered that plaintiff had been taken (surreptitiously, defendant thinks) to some hospital in Kansas for her confinement, and the facts of its birth were discovered in the files of the Kansas State Board of Health.

On this array of circumstances defendant argues that this lawsuit was a "hoax"; that the testimony of the doctor who attended plaintiff in the hospital following the alleged accident was unworthy of credence; that if the child which weighed 8 lbs. 12 oz. was prematurely born—

"If . . . this child was conceived after marriage of November 7, 1935, then had it been carried to the full nine-months period it would have been a monstrosity of fifteen or sixteen pounds, as it is well known the foetus just about doubles in size between the seventh and ninth months after conception. The conclusion is inescapable that this child born one day less than ten months after the alleged injuries was conceived about a month or less after August 21, 1935, and that the plaintiff was not injured at all."

We think that notwithstanding the zeal with which these matters

are now urged, they spent their force when they failed to persuade the district court that a new trial should be granted. And, indeed, a careful examination of the record fails to disclose that an appeal was taken from the trial court's ruling on this belated motion for a new trial—even if it be tolerantly regarded as a *petition* for a new trial, as it must, if it had any legal potency. Judgment was entered on the verdict on May 2, 1936, and an appeal was perfected on June 2, 1936. The record shows no appeal from any rulings of the trial court made after that date. Consequently the intriguing matters touching the newly discovered evidence after the birth of plaintiff's child are not open to this review.

Other errors urged on our attention have been carefully considered, but they present nothing which would justify comment. No prejudicial error in the record appears, and the judgment is affirmed.