[No. 7011.  Decided November 13, 1907.]

JAMES M. MOONEY, *Respondent*, v. SEATTLE, RENTON & SOUTHERN RAILWAY COMPANY, *Appellant*.[1]

APPEAL—REVIEW—WAIVER OF ERROR.  Error in refusing to grant a nonsuit is waived by proceeding with the trial.

CARRIERS—OF PASSENGERS—NEGLIGENCE OF MOTORMAN—CONTROL OF STREET CAR ON STEEP GRADE.  It is gross negligence for a motorman, on a street car heavily loaded with passengers, after turning off the power and setting the brakes at the top of an eleven per cent grade, to leave the controller surrounded by passengers, allowing the car to descend without any guiding hand, and go so far from his post of duty that, when a passenger turned on the power and released the brakes, he could not return until the car had sped a distance of four or five blocks, there being no controlling necessity for such action.

APPEAL — REVIEW — HARMLESS ERROR — TRIAL.  Error cannot be predicated on misconduct of counsel in a controversy over the law applicable to the case and the reading of a decision, where the decision was not read and no prejudice appears.

DAMAGES—INJURIES—EXCESSIVENESS.  A verdict for $5,000 reduced by the trial court to $3,500, for injuries sustained by a barber, who, nine months after, was seriously crippled and unable to perform labor or follow his usual occupation, will not be set aside on appeal as excessive.

Appeal from a judgment of the superior court for King county, Frater, J., entered June 7, 1907, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a passenger through being thrown from a street car.  Affirmed.

*Sachs & Hale*, for appellant.

*Jackson Silbaugh*, for respondent.

RUDKIN, J.—This was an action to recover damages for personal injuries.  The following facts appear without substantial conflict or contradiction.  The defendant owns and

[1]Reported in 92 Pac. 408.

operates a street car line between the city of Seattle and the town of Renton, a distance of about ten miles. The car line descends from Jackson street to Dearborn street, a distance of four blocks, at a grade of eleven per cent. At Dearborn street a switch turns the southbound cars to the right-hand track, as you go south, and from that point a double track is maintained. On the evening of July 2, 1906, the plaintiff became a passenger on one of defendant's outgoing cars. The seats were all filled and passengers were standing in the aisle and on the front and back platform, the car containing about ninety or one hundred passengers in all. The plaintiff occupied a standing position on the back platform near the car door. As the car passed Jackson street, the motorman set the brakes, turned off the power, and left his post at the controller to close a gate at the side of the car. While thus engaged, one of the passengers stepped up to the controller, released the brakes and turned on the power. As he did so, the car shot ahead and soon attained a speed of from twenty-five to thirty miles per hour, and as it rounded the curve onto the switch at Dearborn street, the plaintiff was hurled from the car and received injuries for which a recovery is sought in this action. From a judgment in his favor, the present appeal is prosecuted.

The first error assigned is the refusal of the court to grant a nonsuit. We have repeatedly held that such an error is waived by proceeding with the trial after the nonsuit is denied, and that this court will thereafter consider only the entire record.

The second assignment is the refusal of the court to give the following instruction:

"If you find from the evidence that when approaching the switch at Dearborn street the motorman shut off the power which was propelling the car and set the brakes, as was customary at such place, so that the car would under such condition have been running very slowly when reaching the switch, and that after shutting off the power and setting the

brake, as aforesaid, the motorman, in the exercise of his duty, stepped to the side of the platform for the purpose of closing the gate of said car, and that while so engaged a passenger on the car, acting without any authority from the defendant company, released the brake and turned on the power so that the car shot ahead down the inclined track, then I charge you that the accident complained of was the result of the wrongful act of such passenger and the defendant railway company cannot be held liable to the plaintiff for any injury received by him, and your verdict should be in favor of the defendant."

The court gave the instruction substantially as requested, with this addition or modification:

"And if you further find that the motorman, as soon as he observed that some one had turned on the power, used due diligence in getting control of the car, and that he in no manner contributed to said accident . . ."

The instruction as thus modified is by no means free from ambiguity. From the first part of the charge one would infer that the court did not deem the motorman guilty of negligence for leaving his post of duty for the purpose of closing the gate, under the circumstances detailed in the charge; but what was intended by the further statement, "and that he in no manner contributed to the accident," is not entirely clear. Certainly the act of the motorman in leaving his post so that any passenger might release the brakes or turn on the power contributed to the accident, but in view of the first part of the charge, the court could have scarcely so intended. Perhaps the court intended only some affirmative action on the part of the motorman, contributing to the accident. But whether the instruction is susceptible of this construction we need not inquire. We think the charge in any aspect we may view it was more favorable to the appellant than the law would warrant. In our opinion, a motorman in charge of a car loaded with passengers, who sets his brakes, turns off his power, permits his car to descend an eleven per cent grade, without a guiding hand, leaves his controller surrounded by passengers, any one of whom may release the brakes or turn

on the power at will, and goes so far from his post of duty that he cannot return thereto until the car has sped a distance of four or five blocks, without some controlling necessity for such action on his part, is guilty of gross and inexcusable neglect; and the appellant could not be prejudiced by any charge the court might give on the question of its negligence.

The next error assigned is the refusal of the court to give an instruction defining proximate cause. By this instruction the appellant sought to distinguish between the acts of the motorman and the acts of the passenger who released the brakes and turned on the power, but what we have already said disposes of that question, as well as the refusal of the court to direct a judgment notwithstanding the verdict, which is the next error assigned.

The last error assigned is the refusal of the court to grant a new trial. On the hearing of this motion the court overruled the same, on condition that the respondent would remit $1,500 from the $5,000 verdict returned by the jury. The remission was made, and judgment rendered in favor of the respondent for $3,500.

The only questions raised by the motion not already disposed of are (1) misconduct of counsel, and (2) insufficiency of the evidence to justify the verdict. During the closing argument for the respondent, a controversy arose between counsel over reading a certain decision of this court to the jury, over the law applicable to the case, and over certain facts and the inferences to be drawn therefrom. The decision was not read to the jury and we fail to see wherein the appellant was prejudiced or injured in any of the matters complained of.

On the last question to be discussed we think the testimony was ample to sustain the verdict as reduced by the trial court. At the time of the trial, some nine months after the accident, the respondent was seriously crippled and unable to perform labor or follow his usual occupation, that of barbering. The jury, who heard the testimony and saw the respondent,

awarded him $5,000; the trial court, in the exercise of the discretion vested in it by law, reduced the amount of the recovery to $3,500, and there is nothing in the record to convince us that a further reduction should be made.

The judgment of the court below is accordingly affirmed.

HADLEY, C. J., DUNBAR, CROW, and FULLERTON, JJ., concur.

MOUNT and ROOT, JJ., took no part.