MRS. CHARLES A. KLIEBENSTEIN, Appellee, v. IOWA RAILWAY AND LIGHT COMPANY, Appellant.

**CARRIERS:** Carriage of Passengers—Leaving Car Unguarded. Principle reaffirmed that a carrier of passengers is negligent if it exposes a passenger to any danger which human foresight and care can apprehend and provide against. So held where a motorneer temporarily abandoned his car on a grade, with the result that an intermeddler released the brakes and thereby injured the passenger.

**CARRIERS:** Carriage of Passengers—Proximate and Concurrent Cause. An act of negligence which may fairly be found to be the proximate cause of an injury to a passenger is not rendered nonproximate by the fact that a later negligent act concurs therewith.

**APPEAL AND ERROR:** Harmless Error—Evidence Without Applicability. The improper reception in evidence of life tables is rendered

harmless by the act of the court in specifically withdrawing from the jury the question of permanent injury.

*Appeal from Marshall District Court.*—B. F. CUMMINGS, Judge.

## MAY 9, 1922.

ACTION for personal injury alleged to have been caused by the negligence of the defendant. From a verdict and judgment for plaintiff, defendant appeals.—*Affirmed.*

*John A. Reed* and *E. N. Farber,* for appellant.

*C. H. Van Law* and *McCoy & McCoy,* for appellee.

ARTHUR, J.—The plaintiff was a passenger on one of the cars of the defendant, a street railway company operating a street railway in Marshalltown, Iowa. The car upon which the plaintiff was riding at the time in question was a one-man car, and the motorman, who was also the conductor and in sole charge of the car, stopped the car near the car barn on South Third Avenue in the city of Marshalltown, at which place the street inclines to the south across the tracks of the Great Western Railway Company. This incline is a 2.9 per cent grade, referred to in the testimony as a steep grade, and as the South Third Street Hill. When the car stopped, the motorman set the brakes, left the car with the front door open, and went to the waiting room of the car barn, some distance away, to get a book of transfers. At the time he left the car, the gates at the Great Western Railway crossing just ahead of the car were closed, and a freight train was passing. Someone in the car complained that it was cold, and one Deuell, who was the employee of the street car company, but who had nothing whatever to do with the operation of its cars, went to the door, to close it; but instead of taking hold of the lever by which the door was opened and closed, he grasped the lever that released the brakes, and did release them. The motorman saw the car when it first began to move, and ran to it, but did not reach it until it had passed the point of danger. As soon as the car

started coasting toward the freight train that was passing, the passengers hurried to get off; and the plaintiff, in alighting from the car, turned her ankle, spraining it; and for the injury and damage thus sustained, she brought this suit.

The principal matters complained of by the appellant are:

(1)  That the instructions placed upon the defendant, as a passenger-carrier, a too high degree of care in the protection of its passengers.

(2)  That the instructions ignore the connection between the plaintiff's injury and the act of Deuell in releasing the brakes of the car, and, in effect, charged the jury that the act of the motorman in leaving his post of duty was the proximate cause of the injury.

(3)  That the instructions also charged the jury, in effect, that the acts of the motorman were negligent, as a matter of law.

The sixth instruction, the first paragraph of which pertains to the duty of the defendant in the protection of its passengers, is as follows:

1. CARRIERS: carriage of passengers: leaving car unguarded. "You are instructed that the defendant company as a carrier of passengers for hire owed a duty to its passengers to so manage its car that they would not be exposed to any danger which human foresight and care could apprehend and provide against.

"In this case, if you should find from a preponderance of the evidence that the defendant's motorman in charge of said car left the same on the tracks of said defendant company, while the car was occupied by the passengers, one of whom was plaintiff, and so left the said car upon said track upon an incline or grade where the same was liable to or would start, should the brakes be loosened by any cause, and that said car, when so started, would proceed down grade and on to the railway crossing, and expose such passengers to danger; and that said motorman went so far from his post of duty that he could not return thereto and control the said car before it reached a place of danger, then and in the event of your so finding, you are instructed that such acts on the part of the motorman in so leav-

ing the said car, under the circumstances, would constitute negligence on the part of the defendant.''

That a carrier of passengers for hire must exercise more than ordinary diligence in ·the protection of its passengers is a rule well established.   The carrier's duty stops just short of insuring the safety of the passenger, and the common expressions of the law on this subject are that the carrier is bound to protect the passenger as far as human care and foresight will go, and that the carrier is liable for slight negligence.   2 Hutchinson on Carriers (3d Ed.), Section 893, *et seq.; Kellow v. Central Iowa R. Co.,* 68 Iowa 470; *Hutcheis v. Cedar Rapids & M. C. R. Co.,* 128 Iowa 279; *Pershing v. Chicago, B. & Q. R. Co.,* 71 Iowa 561; *Arnett v. Illinois Cent. R. Co.,* 188 Iowa 540.   In *Raymond v. Burlington, C. R. & N. R. Co.,* 65 Iowa 152, we said:

''The defendant complains of an instruction given by the court, to the effect that it was the duty of the defendant, as a common carrier of passengers, to exercise extraordinary care and caution; but it appears to us that the rule of the instruction is well settled'' (citing *Sales v. Western Stage Co.,* 4 Iowa 547).

The portion of the sixth instruction which relates to the duty of the carrier to its passenger states the law correctly, and does so in substantially the language in which the rule is stated generally.

The appellant complains of the trial court's treatment of the fact shown in evidence that Deuell, an interloper, and not the motorman or some other employee of the company in charge of its cars, was the person who released the 2. CARRIERS: carriage of passengers: proximate and concurrent cause. brakes and allowed the car to move toward a place of danger.   This complaint underlies all but the first five, the twelfth, and the fifteenth assignments of error relied upon for reversal.   It is true, the instructions refer only indirectly to the act of Deuell, and this reference is found in the last clause of the eighth instruction, which reads as follows:

''You are instructed that, if you find, under Instruction No. 6; that the defendant was guilty of negligence, you are justified in finding that the proximate cause of plaintiff's injury was the negligence of defendant's motorman in so leaving his post of

duty, notwithstanding the fact that the acts of some other person may have intervened and assisted in causing the accident.''

The ninth error assigned clearly expresses appellant's position with respect to this matter. It reads:

''The court erred in refusing to give the third instruction asked by the defendant, for the reason that, if it was the act of Deuell which caused the street car to move and leave the place where it was left by the motorman, then defendant was not liable.''

This is an erroneous idea of the law. Just because Deuell's act in releasing the brakes was the last act involved in putting the car in motion, it does not necessarily follow that the motorman's act in leaving the car where he did, under the circumstances, was not negligence, and also the proximate cause of the injury. *Gould v. Schermer*, 101 Iowa 582. In a proper case, a jury might well have found them both negligent. Deuell's act was an intervening one only in point of time. With relation to the movement of the car, his act concurred with the act of the motorman; for, had not the car been left on a grade or hill, the releasing of the brakes would not have started it, nor would the movement of the car have been attended with any danger if the car had not been headed toward the railroad crossing, or if the motorman had been in a position where he could have reached it and controlled it. It was immaterial that Deuell was negligent, and that his negligence operated with the alleged negligent acts of the motorman to produce the injury. The sole question at this point was as to whether the defendant's motorman exercised the skill and foresight necessary to be exercised by a passenger-carrier for the protection of its passengers. The court's refusal to give the instructions requested by the defendant touching this question was not error. In *Kellow v. Central Iowa R. Co.*, supra, we said:

''The duty of the carrier to make provision for the safety of the passenger grows out of the contract between the parties; and if he fails, even through negligence, to perform that duty, and the passenger suffers an injury in consequence of such failure, the carrier is held liable therefor, on the ground that his negligence constitutes a breach of his undertaking.''

We said further:

"If defendant * * * exposed the passenger to a danger which might have been anticipated, and at the same time neglected to take any precautions to protect him therefrom, it thereby violated its undertaking with him, and, if he suffered the injury in consequence of this violation by defendant of its contract, it is liable therefor, even though the immediate cause of the injury was the wrongful or negligent act of another. The principle contended for by defendant would govern in a case where one has been injured by the independent acts of two wrongdoers, neither of whom owed him any special duty. But it has no application where the act of one of the wrongdoers constitutes a breach of contract."

See, also, *Valdosta St. R. Co. v. Fenn*, 11 Ga. App. 586 (75 S. E. 984); *Mooney v. Seatlle, R. & S. R. Co.*, 47 Wash. 540 (92 Pac. 408).

And in this connection, the appellant contends that the eighth instruction above set out does not correctly state the law as to proximate cause, as the same should be applied under the facts of this case. It is claimed by the appellant that the instruction is equivalent to saying that, as a matter of law, the acts of the motorman were the proximate cause of the injury. Although the instruction is not to be commended, because of its lack of fullness, we think, from a careful reading of it, that it amounts to this: That, because the acts of Deuell intervened and assisted in causing the injury, that act is not necessarily the sole proximate cause thereof, and that the law does not excuse the defendant from liability if, under the facts as shown, the acts of the motorman were found by the jury to be negligent, and of such a nature that they operated with those of Deuell in producing the injury. If the appellant's construction is placed upon this instruction, the last clause, which has reference to the act of Deuell, would be rendered useless and without meaning.

The position of the appellant that the last paragraph of the sixth instruction, quoted above, charges the jury, in effect, that the act of the motorman in leaving the street car where he did and in the manner he did, was negligence, is not tenable. The instruction leaves it for the jury to say whether the car

was left at such a place that it was liable to start or would start if the brakes were loosened; whether the car would proceed toward danger if it started; and whether the motorman left it at such a distance that he could not reach it and control it if it started. No other meaning can reasonably be drawn from the second paragraph of the sixth instruction.

Other assignments of error need be mentioned only briefly. They relate to the admission of certain evidence referred to in the first five errors assigned, to the appellant's claim that the court submitted the question of permanent injury to the jury, and to the court's submission of the question of damages for nurse hire, doctor's bills, and medicine, as set forth in the twelfth and fifteenth assignments.

The bits of testimony referred to in the first four errors assigned, we find were either clearly admissible or admitted without prejudice to the appellant. The fifth error assigned, relating to the admission of the life tables, was rendered nonprejudicial by the fact that the court in its tenth instruction withdrew from the consideration of the jury the question of permanent injury. And, although the instructions speak of future pain and inconvenience caused by the injury, this clearly has reference to the immediate future, as testified to by the physician. There was testimony of the expense of medical treatment for the injury, which was admitted without objection; and if the allegation in the petition with reference thereto was not sufficiently specific, it could have been made so by proper motion of the defendant.

3. APPEAL AND ERROR: harmless error: evidence without applicability.

We find no reversible error in the record, and the judgment entered by the trial court is affirmed.—*Affirmed.*

STEVENS, C. J., EVANS and FAVILLE, JJ., concur.