ANNA MARY ROZMAJZL, appellee, v. NORTHLAND GREYHOUND LINES et al., appellants.

No. 47894.

(Reported in 49 N.W.2d 501)

1136

OCTOBER 16, 1951.

Shull & Marshall, of Sioux City, for appellant Northland Greyhound Lines.

Hutchison & Hurst, of Sioux City, for appellant Sioux Lines, Inc.

Harper, Gleysteen & Nelson, of Sioux City, for appellee.

GARFIELD, J.—Plaintiff was a passenger on a bus owned by defendant Sioux Lines, Inc., driven by one of its drivers. She was riding on a ticket from Omaha to Winnipeg sold by defendant Northland Greyhound Lines over a route for which it held the permit. She brought this action against both defendants to recover for personal injuries sustained in a collision between the bus and an automobile. Each defendant denied liability to plaintiff and alleged by cross-petition against its codefendant it was entitled to full indemnity and judgment over against the codefendant.

Plaintiff recovered verdict and judgment against both defendants. The trial court rejected each defendant's claim for total indemnity against the other but held each was entitled to contribution from the other for half of any sum paid on the judgment. Each defendant appeals and assigns two errors. (1) Both defendants were entitled to a directed verdict against plaintiff because of insufficient showing of negligence. (2) Denial of its claim for full indemnity and judgment over against its codefendant.

On the day in question a Northland bus was unable, due to mechanical failure, to make its scheduled run from Sioux City, Iowa, to Luverne, Minnesota. Northland's driver arranged by telephone with Sioux Lines' manager to furnish a bus and driver for the run, to be paid by Northland on a "per mile basis." The arrangement was informal such as frequently made between bus lines, especially the two defendants, when there were mechanical failures or excess passengers.

Three days after the collision Northland's driver approved for payment a "Driver's Purchase Order" asking Sioux Lines to furnish the bus involved in the accident and send its bill to Northland. This order, such as used for purchases of gasoline and oil, does not purport to fix the relation between the two defendants or liability as between them in case of accident.

Evidence for plaintiff is that she was a passenger on the bus seated in the front seat on the aisle behind the driver. Another

passenger sat next to the window. There was a collision and the bus came to rest in the ditch at the right of the pavement. Plaintiff was seriously injured and did not know how the accident happened.

Northland produced the testimony of Steffens who arranged for the bus from Sioux Lines, took the tickets and rode on the bus. He said the bus was traveling north on its right side of the center line about 45 miles per hour. The right wheels of a southbound automobile got off the west side of the pavement. The automobile was then turned to the left (east), skidded in front of the bus and the collision occurred. "It was raining at the time. The pavement was wet and sloppy. Some mud and slush on it. It was a little slippery. They were building the adjoining highway to make it a four-lane highway. We were on the old paving. Trucks working on the new highway were using this old paving to get back and forth to the new road. Some of the muck and slush on the pavement came from these trucks. * * * My best estimate is that the bus was going about 45 miles an hour. I doubt if it could have been more but so far as I know it probably could have been."

Sioux Lines' manager and Munster, who drove the bus, testified for Sioux Lines. Both said the bus was equipped with a "governor" which limited its speed to 45 miles per hour and the bus was in good mechanical order. Munster testified he first saw the oncoming automobile when it was 400 to 600 feet away. When it was about 50 feet from the bus it ran off on the shoulder, was pulled back on the pavement (18 feet wide) and skidded in front of the bus. "When I first saw the car drop off the pavement I let up on the gas feed and when it skidded I immediately applied brakes. * * * I estimate the speed of the Kinney car between 55 and 60 miles per hour and of the bus just before the impact at 40 miles per hour." Munster frequently traveled this road before the accident and was familiar with it. The routes of the two defendants' lines were the same from the outskirts of Sioux City to beyond the place of the collision.

Defendants produced no other evidence relating to the accident. There were twenty-two passengers on the bus.

I. A carrier of passengers for hire must exercise more than ordinary diligence for their protection. Its duty stops just short of insuring their safety. It is bound to protect its passengers.

as far as human care and foresight will go and is liable for slight negligence. Kliebenstein v. Iowa Ry. & L. Co., 193 Iowa 892, 895, 188 N.W. 129, and citations; Womochil v. Peters, 226 Iowa 924, 929, 285 N.W. 151, 153; Murray v. Cedar Rapids City Lines, 242 Iowa 794, 800, 48 N.W.2d 256, 260. See also 13 C. J. S., Carriers, section 678a; 10 Am. Jur., Carriers, section 1246; annotation 69 A. L. R. 980. "* * * the high degree of care must be exercised in *foreseeing*, as well as in *guarding against*, danger." Murray case, supra.

Plaintiff made a prima facie case by showing she was injured while a passenger on the bus by a collision between the bus and the automobile. This cast upon defendants the burden to show their freedom from negligence in causing the collision. Plaintiff was not bound to prove any particular act of negligence by defendants. Crozier v. Hawkeye Stages, 209 Iowa 313, 318, 319, 228 N.W. 320, and citations; Arnett v. Illinois Cent. R. Co., 188 Iowa 540, 542, 176 N.W. 322, and citations; article by Harry G. Slife, 35 Iowa Law Review 393, 400; Gleeson v. Virginia Midland R. Co., 140 U. S. 435, 443, 444, 11 S. Ct. 859, 862, 35 L. Ed. 458, 463.

The authorities make it plain it is usually a question for the jury whether such a prima facie case has been met. We do not think defendants succeeded in rebutting the prima facie case here so conclusively that they were entitled to a directed verdict.

The jury could properly find the weather and road construction work at the scene of the accident made driving unusually hazardous. The bus driver saw the Kinney automobile 400 to 600 feet away. An experienced bus driver like Munster, using a high degree of care, could have anticipated the Kinney car might get into trouble under such conditions of weather and road and reduced the speed of the bus. Yet there is evidence *for defendants* the bus was traveling at or near the maximum speed of 45 miles per hour then (1948) permitted by statute (section 321.287, Code, 1946) under the best weather and road conditions as well as by the "governor" on the bus. Reasonable minds could find this was not the high degree of diligence a carrier owes its passengers and was at least slight negligence.

Even an automobile driver required to use only ordinary care does not necessarily do so by complying with statutory pro-

visions. Statutes prescribe only the minimum of prudent conduct. Langner v. Caviness, 238 Iowa 774, 779, 28 N.W.2d 421, 424, 172 A. L. R. 1135, 1138; Knaus Truck Lines v. Commercial Freight Lines, 238 Iowa 1356, 1365, 29 N.W.2d 204, 209; Van Wie v. United States, D. C. Iowa (Judge Graven), 77 F. Supp. 22, 37. "A motorist should not operate his vehicle up to the speed limit of the statute * * * if the circumstances are such that reasonable and ordinary care and prudence require a lesser speed. [Citations.]" Richards v. Begenstos, 237 Iowa 398, 408, 21 N.W.2d 23, 28.

■ Defendants' argument that they have conclusively established the sole cause of the collision was Kinney's negligence cannot be accepted. That it was a concurring cause may be conceded. Of course Kinney was required to exercise only ordinary care. Kinney's conduct would not relieve defendants if, as we have indicated, the bus driver, in the exercise of a high degree of care, might reasonably have foreseen it or similar conduct. See Knaus Truck Lines v. Commercial Freight Lines, supra, at page 1366 of 238 Iowa, page 209 of 29 N.W.2d, and citations; Primus v. Bellevue Apts., 241 Iowa 1055, 1063, 1064, 44 N.W.2d 347, 352, 353, and citations; Kliebenstein v. Iowa Ry. & L. Co., supra, 193 Iowa 892, 188 N.W. 129; 38 Am. Jur., Negligence, sections 70, 72; 65 C. J. S., Negligence, section 111f, page 697.

Further, the only witnesses by whom defendants sought to rebut plaintiff's prima facie case were employees who were interested witnesses. There were many disinterested persons defendants might have called to testify. Kinney died as a result of the collision and was unable to relate his version of it. (We understand he was alone in the automobile.) Under these circumstances the credibility of defendants' witnesses was for the jury. Southern Railway Co. v. Hussey, 8 Cir., Mo., 42 F.2d 70, 74 A. L. R. 1172, 1178, affirmed 283 U. S. 136, 51 S. Ct. 367, 75 L. Ed. 908; Terminal R. Assn. v. Staengel, 8 Cir., Mo., 122 F.2d 271, 136 A. L. R. 789, 794; Gilchrist v. Boston Elevated Ry., 272 Mass. 346, 172 N.E. 349, 350, 351; Continental Ins. Co. v. Chicago & N.W. R. Co., 97 Minn. 467, 107 N.W. 548, 5 L. R. A., N. S., 99, 108; Gaffney v. New York Consol. R. Co., 220 N. Y. 34, 114 N.E. 1047, 1048; Shaughnessy v. Director General of Railroads, 274 Pa. 413, 118 A. 390, 23 A. L. R. 1211, and annotation 1214. See also

Larkin v. Chicago & G. W. R. Co., 118 Iowa 652, 657, 92 N.W. 891.

II. As defendant Northland Lines concedes, it is liable to plaintiff if (as the jury found) she was injured because of the negligent operation of defendant Sioux Lines' bus. This is because Northland could not evade its duty to its passengers by engaging its codefendant to perform that duty. See Costello v. Smith, 2 Cir., Conn., 179 F.2d 715, 717, 16 A. L. R.2d 954, 958, and citations, and annotation 960; Southern Railway Co. v. Hussey, supra, 8 Cir., Mo., 42 F.2d 70, 74 A. L. R. 1172, 1175, and annotation 1178; Dixie Stage Lines v. Anderson, 222 Ala. 673, 134 So. 23; Bates Motor Transp. Lines, Inc. v. Mayer, 213 Ind. 664, 14 N.E.2d 91; Restatement, Torts, section 428; annotation 28 A. L. R. 122, 123; 13 C. J. S., Carriers, section 701.

That Northland's sale of a ticket to plaintiff whereby it agreed to transport her rendered it liable to her for the negligence of the Sioux driver see Crawford v. Southern Kansas Stage Lines Co., 145 Kan. 580, 66 P.2d 601; Guy v. Interstate Transit, Inc., 244 Ky. 479, 51 S.W.2d 455, 32 Neg. Comp. Cas. Ann. 489; Mullen v. Chester Traction Co., 235 Pa. 516, 84 A. 429, 42 L. R. A., N. S., 76. In the Crawford case, supra, a passenger was allowed recovery as against the defense defendant had leased the bus in which plaintiff was riding to another bus line which held the permit for the route.

III. The trial court withdrew from the jury the claim of each defendant that its liability to plaintiff was secondary to that of its codefendant and it was therefore entitled to judgment over against the latter. The court rejected these claims, held the codefendants were "engaged in a common venture" and each was entitled to contribution from the other for half, and only half, of any sum paid by it on plaintiff's judgment. It is conceded the court properly withdrew these issues from the jury since the pertinent facts are not disputed and only a law question was presented. However, each defendant still insists it is entitled to full indemnity and judgment over against its codefendant.

Generally, in the absence of statute there can be no contribution or indemnity between joint tort-feasors. On considerations of public policy the court will usually leave them where it finds them. However there are several limitations upon, or excep-

tions to, the rule. It is frequently not applied where the tort-feasors are not in equal fault—in pari delicto—although both are equally liable to the injured person. Horrabin v. City of Des Moines, 198 Iowa 549, 199 N.W. 988, 38 A. L. R. 554; City of Des Moines v. Des Moines Water Co., 188 Iowa 24, 35, 36, 175 N.W. 821; Pfarr v. Standard Oil Co., 165 Iowa 657, 146 N.W. 851, L. R. A. 1915C 336; 27 Am. Jur., Indemnity, sections 18, 19; 18 C. J. S., Contribution, section 11; 42 C. J. S., Indemnity, section 27.

One who is liable only by reason of a duty imposed by law for the consequences of another's negligence may recover over against the active perpetrator of the wrong. So a servant is liable to his master who is not at fault for damages the latter is compelled to pay a third person because of the servant's negligence. Hobbs v. Illinois Cent. R. Co., 171 Iowa 624, 628, 152 N.W. 40, L. R. A. 1917E 1023; Northern Pac. Ry. Co. v. Minnesota Trans-fer Ry. Co., 219 Minn. 8, 16 N.W.2d 894, 896; Denver-Chicago Trucking Co. v. Lindeman, D. C. Iowa (Judge Graven), 73 F. Supp. 925, 935; Darman v. Zilch, 56 R. I. 413, 186 A. 21, 110 A. L. R. 826, 828, and annotation 831, 834 (owner, riding with his chauffeur, held entitled to recover from him for his negligence. Held also there was no joint venture) ; Restatement, Restitution, section 96, and comment a; 4 Shearman and Redfield on Negligence, Rev. Ed., section 894.

Indemnity is also frequently allowed a party guilty of passive negligence against one guilty of active or positive negligence. See The Chicago & N.W. Ry. Co. v. Dunn, 59 Iowa 619, 13 N.W. 722; 42 C. J. S., Indemnity, section 27b, page 608.

It is broadly stated that "where one is compelled to pay money which in justice another ought to pay * * * the former may recover from the latter the sums so paid, unless the one making the payment is barred by the wrongful nature of his conduct." 42 C. J. S., Indemnity, section 20; Ruby Lbr. Co. v. K. V. Johnson Co., 299 Ky. 811, 187 S.W.2d 449, 166 A. L. R. 1215, 1217.

We think Northland is entitled to indemnity and judgment over against Sioux Lines. There can be little doubt of Northland's right to indemnity from Munster, the bus driver, since, as between them, he was primarily at fault. See Frank Martz Coach Co. v. Hudson Bus Transp. Co., 23 N. J. Misc. 342,

44 A.2d 488; Darman v. Zilch, supra, 56 R. I. 413, 186 A. 21, 110 A. L. R. 826. And Northland has as much right to indemnity from Sioux Lines as from Munster unless Munster was the servant of Northland, not of Sioux, while driving this bus. It is quite clear Munster remained the servant of his general employer, Sioux Lines. Surrender to Northland of the right to control Munster's manner of driving the bus does not appear.

The applicable law is clearly stated in these comments under section 227, Restatement, Agency:

"b. Inference that original service continues. In the absence of evidence to the contrary, there is an inference that the actor remains in his general employment so long as, by the service rendered another, he is performing the business entrusted to him by the general employer. * * *

"c. Factors to be considered. A continuation of the general employment is indicated by the facts that the general employer may at any time substitute another servant, that the time of employment is short, and that the lent servant has the skill of a specialist.

"A continuance of the general employment is also indicated in the operation of a machine where the general employer rents the machine and a servant to operate it, particularly if the instrumentality is of considerable value. Normally, the general employer expects the employee to protect his interests in the use of the instrumentality and these may be divergent from the interests of the temporary employer. If the servant is expected only to give results called for by the temporary employer and to use the instrumentality as the servant would expect his general employer would desire, the original service continues. Upon this question, the fact that the general employer is in the business of renting machines and men is relevant, since in such case there is more likely to be an intent to retain control over the instrumentality. * * *

"Illustrations: 1. P, a taxicab company, rents a cab and driver to B for a day, upon the understanding that the driver is to take B anywhere that B wishes to go and is to obey all reasonable commands of B. In the absence of evidence that B is to con-

trol the details as to the management of the cab, A is P's servant while driving the car."

We have stated the law substantially as above and cited these comments with approval in Anderson v. Abramson, 234 Iowa 792, 13 N.W.2d 315, which is followed in Miller v. Woolsey, 240 Iowa 450, 35 N.W.2d 584, where comment b is quoted. These decisions are adverse to the contention the right of full control had been surrendered to the temporary employer.

By every one of the quoted tests the inference that Munster remained the servant of his general employer (Sioux) has not been rebutted but has been strengthened. The fair conclusion from the evidence is that Sioux Lines might at any time have substituted another driver for Munster. The time of his employment was short and he had driven a bus some thirteen years—at least several months over this same route between Sioux City and the place of the accident. Sioux rented to Northland the bus of considerable value and Munster to operate it. That Sioux expected Munster to protect its interests in the use of the bus is indicated by its refusal to lease a bus without its own driver. Munster was expected only to give results called for by the temporary employment and to use the bus as he would expect Sioux would desire. Sioux was in the business of renting busses and drivers and had rented them to Northland about twice a week for four years before the accident.

It is true Steffens, Northland's driver, rode on the bus, took tickets and told Munster what route to follow between the bus depot in Sioux City and highway 75 (Munster had been familiar with the route) and that there were passengers to get off at Hinton. But this does not show a surrender to Northland of the right of full control as to the manner of driving the bus.

In Anderson v. Abramson, supra, at page 796 of 234 Iowa, page 317 of 13 N.W.2d, we said in effect that control by the temporary employer "to the extent that they could tell him where to locate the crane, what work to do, and where to obtain and deposit the bucket loads of dirt" was insufficient to show full control.

And in War Emergency Co-op. Assn. v. Widenhouse, 4 Cir., N. C. (Judge Parker), 169 F.2d 403, 406, a case somewhat like this, it is said: "If the driver is not subject to the control of the

hirer of the vehicle in the performance of the work, he is deemed the servant of the owner, *even though the hirer may have the power of directing him when and where to go and what to bring or carry.* [Citations.]" (Italics ours.)

Here it appears without dispute Steffens gave Munster no directions as to how the bus should be driven, also that Munster wore his Sioux Lines' uniform. On the frequent occasions when Sioux leased a bus and driver to Northland because of an excess of Northland passengers, rather than mechanical failure, Northland's driver did not ride on the Sioux bus at all. It could scarcely be claimed that on such occasions the Sioux driver was under Northland's control as to the manner of driving. That Steffens rode on this bus and told Munster where to go and stop is insufficient basis for a different conclusion here.

Purple Swan Safety Coach Lines v. Egyptian Transp. Co., 256 Ill. App. 442, is fairly close to this case on its facts and supports our decision. It is cited with approval in Crawford v. Southern Kansas Stage Lines Co., supra, 145 Kan. 580, 66 P.2d 601, which is also authority for the proposition Sioux Lines is liable *to plaintiff.* The Purple Swan case is cited for this statement in 13 C. J. S., Carriers, section 701, page 1314:

"A carrier whose negligence causes an injury to a passenger who was transported under an agreement between such carrier and the carrier who sold the ticket to the passenger is liable over to the carrier who sold the ticket where the latter has been compelled to pay damages to the passenger."

Our decision also finds support in War Emergency Co-op. Assn. v. Widenhouse, supra, 4 Cir., N. C., 169 F.2d 403.

Precedents cited by Sioux Lines to support its claim for indemnity against Northland merely authorize recovery *by plaintiff* against Northland for negligent operation of the bus and do not sustain Sioux's claim for indemnity against its codefendant. As stated, Northland concedes its liability to plaintiff if her injury was caused by negligent operation of the bus. Such liability is of course no defense to Northland's claim for indemnity against Sioux. Obviously Northland would have no loss to indemnify if it were not liable to plaintiff.

Plaintiff's judgment against both defendants is affirmed. The

judgment for equal contribution as between the codefendants is reversed. Northland is entitled to judgment over against its codefendant for any sum it pays upon plaintiff's judgment. The cause is remanded for judgment accordingly.—Affirmed in part, reversed in part, and remanded.

All JUSTICES concur.