Frank ANDREWS, Plaintiff–Appellee,

v.

METRO NORTH COMMUTER RAILROAD CO., Penn Central Corporation, Consolidated Rail Corporation, National Railroad Passenger Corp., Defendants–Appellants.

No. 1211, Docket 89–7097.

United States Court of Appeals, Second Circuit.

Argued May 25, 1989.

Decided Aug. 16, 1989.

Steven G.M. Biro, Stamford, Conn., for plaintiff-appellee.

Eric Lukingbeal, Hartford, Conn. (Lucia B. Brooks, Robinson & Cole, Hartford, Conn., of counsel), for defendants-appellants.

Before VAN GRAAFEILAND, MESKILL and WINTER, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Metro North Commuter Railroad Co., Penn Central Corporation, Consolidated Rail Corporation and National Railroad Passenger Corp. appeal from a $335,000 judgment of the United States District Court for the District of Connecticut in a personal injury action tried before Judge Daly and a jury. The jury found damages in the amount of $670,000 but found the plaintiff, Frank Andrews, guilty of 50 percent contributory negligence. Although the record before us does not make clear why all four railroads were sued, they were represented by the same firm of attorneys and, for purposes of this lawsuit, appear to have accepted joint responsibility for whatever liability is imposed. In any event, we will treat them as one for purposes of this appeal.

Shortly after midnight of January 18, 1985, Frank Andrews was walking in an easterly direction along the Penn Central Railroad tracks, headed in the direction of the train station at South Norwalk, Connecticut. When Andrews was about two-thirds of a mile west of the station, he was struck by a Metro North train which had just left the station and was headed in a westerly direction. Andrews was grossly intoxicated at the time. Tests made at the hospital to which Andrews was taken immediately following the accident showed the concentration of alcohol in his blood to be 283 mg/dl (28/100 of one percent). Sec-tion 14–227a(a) of Connecticut General Statutes provides that if the ratio of alcohol in a person's blood is "tenhundredths of one percent or more of alcohol, by weight" (100 mg/dl), that person is "under the influence of intoxicating liquor." New York State has a similar statute, Vehicle and Traffic Law section 1192(2). *Goodman and Gilman's The Pharmacological Basis of Therapeutics* (7th ed.1985), recognized as an authoritative text by Andrews' doctor, states that more that 50% of persons are grossly intoxicated when the concentration of alcohol in their bloodstream is 150 mg/dl (15/100 of one percent). *Id.* at 380. Andrews' concentration was almost twice this amount.

On January 16, 1987, Andrews commenced the instant litigation. In support of his claim, Andrews alleged that the defendants failed to keep a proper lookout, failed to keep the train under proper control, failed to give sufficient warning of the train's approach, failed to equip the train with proper lights and warning devices, failed to maintain proper signs, warnings and fences to keep persons away from dangerous areas on the property, and operated the train at a high and unreasonable rate of speed. Andrews also alleged that the property upon which the plaintiff was struck was maintained by the defendants in a dangerous condition, so that persons thereon were unable to see approaching trains. This complaint was certified by Andrews' attorney as required by Fed.R. Civ.P. 11.

On June 15, 1988, Andrews, with the permission of the district court, filed an amended complaint which added a new and markedly different cause of action. In this complaint, Andrews alleged that in the late evening of January 18, 1985, he arrived at the South Norwalk Railroad Station intending to board a train to New Haven as a passenger, and that he slipped and fell from the station platform because of a defective condition consisting of ice, snow and other debris, as well as the deteriorated condition of the platform itself. He alleged further that the defendants were negligent in failing to remove the ice,

snow and debris, in failing to inspect and repair the platform, in failing to place a barrier or post a warning around the defective conditions, in failing to maintain adequate lighting, in failing to post a guard, and in failing to provide an access from the railroad bed back to the platform; that unable to get back on the platform, he wandered along the track bed in a daze to the spot where he was struck.

■ In our opinion, the question whether Andrews should have been permitted to amend his complaint in this manner almost a year and a half after the statute of limitations had run was an extremely close one. We have difficulty with the proposition that the "general fact situation" set forth in Andrews' original complaint gave the defendants notice that a claim would be made of a fall from a twelve-foot wide station platform situated two-thirds of a mile ahead of where Andrews was walking when he was struck. *See Rosenberg v. Martin*, 478 F.2d 520, 526–27 (2d Cir.), *cert. denied*, 414 U.S. 872, 94 S.Ct. 102, 38 L.Ed.2d 90 (1973). Although the defendants may have been alerted to the proposed change by plaintiff's testimony at his pretrial deposition, that does not materially change the picture.

Since a plaintiff such as Andrews ordinarily would tell the full story of his misadventures to his attorney before suit was brought, *see* Fed.R.Civ.P. 11, we confess to a vague feeling of unease as to why the claim of an allegedly defective platform did not surface until such a late stage in the already tardy litigation. This feeling is exacerbated by puzzlement as to how Andrews, who could remember nothing after his alleged fall from the platform, could remember the fall and what caused it. Indeed, under Connecticut law standards, the proof concerning the cause of Andrews' fall was skimpy almost to the point of being legally inadequate. Andrews testified that he "slipped" but did not say what he slipped on, *i.e.*, whether it was snow, ice, a leaf, or a piece of paper. The Connecticut courts have held repeatedly that notice to a defendant of an alleged defect, "whether actual or constructive, must be

notice of the very defect which occasioned the injury and not merely of conditions naturally productive of that defect even though subsequently in fact producing it." *Monahan v. Montgomery*, 153 Conn. 386, 390, 216 A.2d 824 (1966).

Despite our reservations, we recognize that leave to amend "shall be freely given when justice so requires", Fed.R.Civ.P. 15(a), and that grant or denial of leave to amend is within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Guided by these admonitions, we hold that the grant of leave in the instant case was not such a gross abuse of discretion as to require reversal. We hold, however, that the district court's refusal to permit the jurors to be informed of the amendment and to examine the original complaint so that they could contrast it with the amended complaint was a substantial abuse of discretion. The amendment of a pleading does not make it any the less an admission of the party. *United States v. McKeon*, 738 F.2d 26, 31 (2d Cir.1984); *Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Inc.*, 32 F.2d 195, 198 (2d Cir.), *cert. denied*, 280 U.S. 579, 50 S.Ct. 32, 74 L.Ed. 629 (1929). "A party ... cannot advance one version of the facts in [his] pleadings, conclude that [his] interests would be better served by a different version, and amend [his] pleadings to incorporate that version, safe in the belief that the trier of fact will never learn of the change in stories." *United States v. McKeon, supra*, 738 F.2d at 31. The district court erred in refusing to permit the original complaint to be received in evidence.

We need not decide whether this error, standing alone, would require a retrial. Other errors, particularly those connected with the testimony of Andrews' "Forensic Engineer" Michael Shanok, give additional emphasis to the need for a new trial.

■ The Advisory Committee on the Federal Rules of Evidence recognized quite properly that "[a]n intelligent evaluation of facts is often difficult or impossible without the application of some scientific, technical, or other specialized knowledge." *See*

Advisory Committee's Note following Rule 702. Accordingly, it provided in Rule 702 that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert ... may testify thereto." For an expert's testimony to be admissible under this Rule, however, it must be directed to matters within the witness' scientific, technical, or specialized knowledge and not to lay matters which a jury is capable of understanding and deciding without the expert's help. *McGowan v. Cooper Indus., Inc.*, 863 F.2d 1266, 1272 (6th Cir.1988); *Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1055–56 (4th Cir.1986); *United States v. Binder*, 769 F.2d 595, 602 (9th Cir.1985); *Strong v. E.I. DuPont de Nemours Co.*, 667 F.2d 682, 685–86 (8th Cir.1981). Our reading of the record leaves us with the firm conviction that the district court permitted plaintiff's "expert", Shanok, to exceed consistently the legitimate boundaries of this Rule and that these errors were not cured by the district court's charge that the jury was not bound to accept the testimony of expert witnesses.

Starting with his comments about the condition of the railroad platform from which Andrews allegedly fell, Shanok was permitted to testify repeatedly about matters that were neither scientific nor in any way beyond the jury's ken. No one, other than Andrews himself, testified as to the condition of the railroad platform on January 18, 1985. Andrews testified that the station was dirty, filthy and kind of icy, that the platform had trash and ice on it and that the lighting was very dim. The jury needed no special training or expertise to decide whether the platform thus was a "safe place"; yet, over the objection of defense counsel, Shanok was permitted to testify that it was not.

Testifying in the evidentiary vacuum resulting from Andrews' loss of memory, Shanok then attempted to absolve Andrews of improper conduct. With no mention whatever of Andrews' intoxicated condition, Shanok told the jury that, after Andrews fell from the platform, it was "reasonable" for him to have walked the distance of approximately 3,000 feet along the railroad tracks. This was not a proper subject of expert testimony. *See Marx & Co., Inc. v. Diners' Club, Inc.*, 550 F.2d 505, 510 & n. 15 (2d Cir.), *cert. denied*, 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977). Shanok testified that he, Shanok, had looked at an oncoming train at night (which presumably made him an expert on the subject of oncoming trains) and that because of bright lights, "you lose your night vision, and when you lose your orientation, you can't see around you and you don't know, for one thing, how to get safely to the left or the right without tripping over the rails. And secondly, there are four tracks on the right-of-way, and from a distance you can't tell which track the train is on, you have no idea where (sic) you are on the track that's in front of the train or not." Andrews' counsel then asked, "Well, assuming that Mr. Andrews was not on the outside track, then would it be correct to say that he wouldn't be able to tell because of the blinding lights and everything which direction he could go to, whether he could go to the left or right, or whether he should not move at all?" Over defense objection, Shanok testified in the affirmative. Because the above-quoted testimony invaded an area in which the jury was not in need of expert assistance, it was not a proper subject for expert testimony. *See United States v. Brodie*, 858 F.2d 492, 496 (9th Cir.1988); *Brassette v. Burlington Northern, Inc.*, 687 F.2d 153, 158 (8th Cir. 1982). Not only was the testimony improper under Rule 702, it also assumed facts that were not in evidence. The train was visible to Andrews when it came around a curve at least 800 feet away; its lights must have been visible before then. They certainly were not blinding when observed from a distance of 800 feet. Moreover, Shanok testified on the assumption that Andrews "was not on the outside track", when the undisputed evidence was that Andrews was walking on the outside of the most northerly track and could have avoided the train by simply stepping off the ties to his left.

■ Because Shanok's testimony concerning the asserted reasonableness of Andrews' conduct did not purport to set any legal standards, it may be that the resulting prejudice to the defendants was minimal. The same cannot be said of Shanok's testimony concerning the operation of the Metro North train. Shanok testified bluntly that "the railroad was negligent." This prejudicial testimony should not have been allowed.

Connecticut treats negligence as the breach of a duty. The existence and nature of the duty is a question of law to be determined by the court. It is only after the court has prescribed the applicable standard of care, that the trier of fact can determine whether the defendant has violated the standard and the duty. *Gordon v. Bridgeport Housing Authority*, 208 Conn. 161, 171, 544 A.2d 1185 (1988); *Shore v. Town of Stonington*, 187 Conn. 147, 151–52, 444 A.2d 1379 (1982).

Although testimony that embraces an ultimate issue to be decided by the jury is not inadmissible *per se*, Fed.R.Evid. 704, it should not be received if it is based on "inadequately explored legal criteria." *United States v. Scop*, 846 F.2d 135, 140 (2d Cir.1988) (quoting the Advisory Committee's Note to Rule 704). "The problem with testimony containing a legal conclusion is in conveying the witness' unexpressed, and perhaps erroneous, legal standards to the jury." *Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir.1985).

The district court submitted three possible standards of care to the jury. It instructed the jury that it might find that Andrews was a passenger "at the time of the alleged incident", in which case defendants had a duty to use "the highest degree of care and skill that may be reasonably expected of intelligent and prudent persons in the business of carrying passengers for hire by train in view of the instrumentalities employed and the dangers reasonably to be apprehended." If the jury found that Andrews was a business invitee, the defendants' duty was less onerous. Finally, if Andrews was a trespasser, the defendants' duty of care was even less demanding. The district court concluded "[w]hether you find that Mr. Andrews was a passenger, a business invitee or a trespasser, if you find that the defendants breached the duty of care corresponding to Mr. Andrews' status, then the defendants were negligent."

The jury had no way of knowing what standard of care Shanok used as a basis for his testimony that the defendants were negligent. This Court is likewise in ignorance. Because Andrews' counsel argues in this Court that Andrews was a "passenger" at the time he was struck by defendants' train and, as such, was owed the highest degree of care, it might be assumed that counsel's retained "expert" applied the same standard. If he did, he was wrong. Although the district court's subsequent charge on this point was not clear, we doubt the court intended the jury might find Andrews to be a "passenger" when he was struck by the train while walking along the ties two-thirds of a mile from the station. If the court did so intend, we believe the charge was plain error. *See Payne v. Illinois Central R.R.*, 155 F. 73, 76 (6th Cir.1907); *Louisville & N.R.R. v. Hobbs*, 155 Ky. 130, 132–33, 159 S.W. 682, 683 (1913).

We find the admission of Shanok's authoritative pronouncement that the defendants were negligent to be particularly troublesome because his qualifications as an expert in this area were questionable at best. He had no experience whatever in railroading, and this was readily apparent from his testimony. The locomotive engineer testified that, when he saw Andrews walking towards him, he made a service application of the brakes and started blowing the horn. As soon as the engineer saw that Andrews was not leaving the track, he put the train into emergency. In proceeding in this manner, the engineer was acting in accordance with a widely accepted doctrine of railroad law, viz., that, absent knowledge of some disability on the part of a mature pedestrian seen on or near the tracks, a locomotive engineer who gives a proper alarm is entitled to assume that the pedestrian will heed the warning and move to a place of safety. *Box v. South Georgia*

*Ry.*, 433 F.2d 89, 92–93 (5th Cir.1970); *Cagle v. Norfolk Southern Ry.*, 242 F.2d 405, 407–08 (4th Cir.1957); *Kowaleski v. Pennsylvania R.R.*, 103 F.2d 827, 830 (3d Cir.), *cert. denied*, 308 U.S. 556, 60 S.Ct. 95, 84 L.Ed. 467 (1939); 75 C.J.S. *Railroads* § 915; *see Ives v. New York, N.H. & H. R.R.*, 138 Conn. 471, 474, 85 A.2d 902 (1952); *Dyson v. New York and New England R.R.*, 57 Conn. 9, 23, 17 A. 137 (1888).

This well-settled rule not only is a common-sense recognition of how people act, it also takes into account the danger to passengers and crew inherent in emergency brake applications on rapidly moving trains. *See, e.g., New York, N.H. & H. R.R. v. Henagan*, 364 U.S. 441, 81 S.Ct. 198, 5 L.Ed.2d 183 (1960) (per curiam); *Grogg v. Missouri Pacific R.R.*, 841 F.2d 210, 213 (8th Cir.1988); *Rogers v. Elgin, Joliet & Eastern Ry.*, 248 F.2d 710, 711 (7th Cir.1957).

Although Shanok had no railroad experience, he did admit that he once was on a train that went into emergency and he "remember[ed] everyone getting jostled pretty badly" and "people being thrown off balance who were standing in the aisles." Whatever duty defendants' engineer may have owed Andrews, it is beyond dispute that he owed his passengers the highest degree of care. *Southern Ry. v. Hussey*, 42 F.2d 70, 71 (8th Cir.1930), *aff'd*, 283 U.S. 136, 51 S.Ct. 367, 75 L.Ed. 908 (1931). Indiscriminate use of emergency braking procedures is not consistent with the performance of this duty. *See Fierro v. New York Central R.R.*, 256 N.Y. 446, 450, 176 N.E. 834 (1931).

Instead of forming an opinion based on these well-settled rules of law, Shanok made his own law. He testified that the practice of giving a warning to see if a pedestrian would step off the track was wrong and that the train engineer should have put the train into emergency immediately upon seeing Andrews. This was a legal standard of care, promulgated not by the courts or the legislature, but by an inexperienced layman posing as a railroad expert.

Although the admission of expert testimony is ordinarily committed to the sound discretion of the district court, the exercise of such discretion is not without its limits. *United States v. Scop, supra*, 846 F.2d at 139–43; *Scott v. Sears, Roebuck & Co., supra*, 789 F.2d at 1055–56. Such limits were exceeded in the instant case. Concluding for all of the reasons above expressed that a new trial is required, we see no need to address appellants' remaining arguments for reversal.

The judgment in favor of plaintiff is vacated, and the matter is remanded to the district court for retrial consistent with this opinion.