**UNITED STATES of America,**
**Appellee,**

v.

**Marc GENTILE, Defendant–Appellant.**

No. 06–0098–cr.

United States Court of Appeals,
Second Circuit.

May 29, 2007.

Jason P.W. Halperin, Assistant United States Attorney (Celeste L. Koeleveld, Assistant United States Attorney, on the brief), for Michael J. Garcia, United States Attorney for the Southern District of New York, New York, NY, for Appellee.

Mark S. Demarco, Bronx, NY, for Defendant–Appellant.

PRESENT: Hon. WILFRED FEINBERG, Hon. GUIDO CALABRESI, and Hon. RICHARD C. WESLEY, Circuit Judges.

### SUMMARY ORDER

Defendant–Appellant Marc Gentile ("Gentile") appeals from a judgment of conviction entered on November 30, 2005, in the United States District Court for the Southern District of New York (McMahon, J.). Following a jury trial, Gentile was convicted of one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On appeal Gentile argues only that the district court impermissibly admitted expert testimony from Maryland State Police Lieutenant Terry Katz regarding the organizational structure of the Hells Angels motorcycle club. We assume the parties' familiarity with the facts, the procedural history, and the specific issues on appeal.

It is well established that "the decision of whether to admit expert testimony is left to the discretion of the trial judge and should not be set aside unless manifestly erroneous." *United States v. Duncan,* 42 F.3d 97, 101 (2d Cir.1994) (citation and internal quotation marks omitted). Under Federal Rule of Evidence 702, expert testimony is admissible if it would "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. We have explained that "[i]n determining whether such evidence will assist the jury, the district court must make a 'common sense inquiry' into 'whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.'" *United States v. Locascio,* 6 F.3d 924, 936 (2d Cir.1993) (quoting Fed.R.Evid. 702 advisory committee's note). To be admissible, expert testimony also must satisfy the general rules of relevance, which make admissible "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401; *see Unit-*

ed States v. Onumonu, 967 F.2d 782, 786–87 (2d Cir.1992). In addition, "even relevant expert testimony, like all relevant evidence, may be excluded under [Federal Rule of Evidence] 403, if its probative value is outweighed by the danger that it would confuse the jury, be unfairly prejudicial, cause undue delay, waste judicial resources, or be cumulative." Id.

Moreover, while this court has explained that expert testimony about the structure and workings of a group engaged in criminal activities is permissible either "as background for an offense [or] to assist in proving one or more elements of the offense," United States v. Mulder, 273 F.3d 91, 101 (2d Cir.2001), the government cannot use the expert testimony to show that because a certain group to which the defendant belongs characteristically engages in certain criminal behavior, it can be inferred that the defendant must also have engaged in such behavior, id.; United States v. Castillo, 924 F.2d 1227, 1232–34 (2d Cir.1991).

■ Gentile argues first that the expert testimony in this case was inadmissible because it was directed solely to "lay matters which a jury is capable of understanding and deciding without the expert's help" [Blue 9 (citing Andrews v. Metro North Commuter R.R. Co., 882 F.2d 705, 708 (2d Cir.1989))]. This contention is without merit. This court has upheld the use of expert testimony in analogous circumstances, e.g., (a) "to help explain the operation, structure, membership, and terminology of organized crime families," Locascio, 6 F.3d at 936, (b) to explain the operations of drug dealers, Castillo, 924 F.2d at 1232–34, and (c) to explain the structure of minority construction coalitions, Mulder, 273 F.3d at 101. Similarly, the specifics of the Hells Angels hierarchy are not a matter of common knowledge, and the district court was well within its discretion in finding that the testimony would be of assistance to jurors.

■ The district court also was not manifestly erroneous in concluding that Lieutenant Katz's testimony was relevant. There was no evidence that Gentile ever had actual possession of the guns in question, so the crux of the government's case was proving constructive possession. Constructive possession requires that the defendant "knowingly [had] the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." United States v. Hastings, 918 F.2d 369, 373 (2d Cir. 1990) (internal quotation marks omitted) (emphasis added); see also United States v. Dhinsa, 243 F.3d 635, 676–77 (2d Cir. 2001). The testimony about the hierarchy of the Hells Angels, which allowed the jury to infer the likely roles that Gentile and co-defendant Joseph Guiliano played within the organization, provided the jury with additional evidence in support of finding that Gentile had (a) dominion over a lock box in which the guns were stored and (b) knowledge that Guiliano had placed the two guns in the box. Accordingly there was no manifest error in finding the testimony relevant.

■ Nor can Gentile establish manifest error on the grounds that Lieutenant Katz's testimony was more prejudicial than probative. The testimony did have probative value, and the government's careful limitation of the testimony minimized any potential prejudice. Lieutenant Katz did not mention any wrongdoing by the Hells Angels, state that the group was involved in illicit activities, or suggest that it was common for Hells Angels members or associates to have guns. He simply laid

out in a non-judgmental way the hierarchy of the group. Explaining the organization of a group, even a criminal group, has not been found to be prejudicial. *See, e.g., Mulder,* 273 F.3d at 101.

Here, in contrast to *Castillo,* 924 F.2d at 1233–34, and *United States v. Cruz,* 981 F.2d 659, 662–63 (2d Cir.1992), Lieutenant Katz's testimony was not used to suggest criminal conduct by association. To the contrary, at no point in his testimony did Lieutenant Katz even suggest that the Hells Angels were involved in illegal activity. Nor was the testimony used to corroborate lay witnesses' stories. Rather, it appropriately provided the jurors a framework for interpreting the testimony of the other witnesses. Thus, Lieutenant Katz's testimony was the type of "dry explanation" of an organization's activities that is an appropriate use of expert testimony. *Cruz,* 981 F.2d at 662; *see Mulder,* 273 F.3d at 101.

For all these reasons, the district court did not abuse its discretion in admitting Lieutenant Katz's expert testimony, and the judgment of conviction is AFFIRMED.